489 So.2d 381 (1986)
Earl P. JONES, Jr.
v.
CRESCENT CITY HEALTH AND RACQUETBALL CLUB and Neils Martin.
No. 86-CA-14.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1986.
Wessel, Bartels & Ciaccio Law Corp., William F. Wessel, Victoria Lennox Bartels, New Orleans, for Crescent City Health and Racquetball Club, defendant-appellant.
Porobil, Maguire & Lash, Gregory M. Porobil, New Orleans, for Earl P. Jones, Jr., plaintiff-appellee.
Before CHEHARDY, GAUDIN, and WICKER, JJ.
CHEHARDY, Judge.
Earl P. Jones, Jr., instituted this suit for damages for wrongful termination of a lifetime contract against Crescent City Health and Racquetball Club and Neils Martin, its *382 alleged owner.[1] Defendants denied the allegations. Following trial, judgment was rendered in favor of plaintiff for $1,994.97 against the club. That defendant has appealed and plaintiff has answered the appeal asking for an increase in quantum.
On October 1, 1966, Jones purchased a lifetime membership in the club for the sum of $250 and he used the facilities from that time on a regular basis until 1978 when an unpleasant incident occurred between himself and Mr. Martin, the club manager.
According to plaintiff the air conditioning was not working in the locker room and it was very hot and humid. Martin was in the room with some other people when plaintiff said to him in jest, "Marty you didn't pay your electric bill." Martin got mad and said, "Why don't you leave and work out somewhere else," so plaintiff left.
Martin confirms the incident, but denies barring plaintiff from the club, and plaintiff agrees that he was not barred from returning to the club, although he was embarrassed by the incident.
Between 1978 and 1981 plaintiff had moved across the lake and worked in town. Thus it was inconvenient for him to return to the club during that period. However, in 1981 he moved to Metairie only three or four blocks from where the club is now located and, having a lifetime membership, he wanted to return to use the club.
In the summer of 1981 plaintiff went to the club. He was met by Martin's wife who works in the office. They had a brief friendly conversation and she offered to show him the new facilities. When they got back to the office Mr. Martin was there. The two men shook hands, exchanged pleasantries and then Martin left. According to plaintiff, Martin returned a few minutes later, cursed him and told him to get out and that he did not want him around.
Martin recalls the incident, confirming the men shook hands and that plaintiff said he and his wife wanted to join the club. According to Martin, "... the only thing I held against him was that his wife had referred to my place as a dump when she went to Aquarius (another health club) ... I related this instance and said, I don't want you and your wife as members." After that plaintiff left.
Mrs. Martin testified that while she was showing plaintiff the club facilities he said, "... the equipment is nice but the club is still a dump." When they returned to the office her husband walked in and said he did not want plaintiff as a member. Plaintiff then got mad and left.
Defendant's position in the trial court was that plaintiff was not a life member, but was only a member from time to time. In view of the October 1966 receipt produced by plaintiff for a lifetime membership and the evidence at trial, defendant does not continue to contest that plaintiff purchased a life membership.[2]
In this court appellant contends the trial court erred in (1) finding defendant terminated the contract in 1981; (2) holding that two years' notice would be reasonable; (3) awarding damages based upon the cost of a comparable health club; and (4) awarding plaintiff sums he did not seek to recover.
Relative to appellant's first contention, it claims the relationship of the parties was terminated in 1978. There is not merit in this contention. Plaintiff and Mr. Martin both confirmed the incident in 1978, but Martin stated he did not bar plaintiff from returning to the club at that time, and plaintiff agreed at the trial. Consequently there is no dispute. Defendant was relying on plaintiff's testimony at an earlier deposition wherein plaintiff claimed to have been *383 barred in 1978. However, plaintiff explained he had been mistaken about the date at that time.
The incidents in 1978 and 1981 were confirmed by both plaintiff and Martin, and the trial court correctly found plaintiff was not barred until 1981. The fact Mr. Jones did return in 1981 is an indication that he did not consider he had been barred from returning after the 1978 incident.
Relative to appellant's second and third contentions:
In reasons for judgment the trial court found that plaintiff had a valid contract for a lifetime membership which was improperly terminated by the club. It held that under Louisiana law a contract for life and a contract for an indefinite period are terminable at the will of either party upon giving reasonable notice. Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228 (1930); Baynard v. Guardian Life Ins. Co., Etc., 399 So.2d 1200 (La.App. 1st Cir. 1981); Caston v. Woman's Hospital Foundation, Inc., 262 So.2d 62 (La.App. 1st Cir.1972).
Having determined the contract was breached by the defendant, the court was then called upon to decide what constituted reasonable notice. It had before it evidence of the cost per year at a comparable health club. Therefore, taking into consideration the price of the initial membership and the conduct of all parties involved, it found that two years' notice would be ample and reasonable and awarded plaintiff the cost of membership in a comparable club during that period.
Defendant contends two weeks would have been ample time for plaintiff to affiliate with another club.
We disagree.
The court found defendant acted in an arbitrary and unreasonable manner completely without regard to plaintiff's claims to the facility when defendant terminated the contract without any notice or fair warning.
We agree with the trial court conclusion that two years' notice would be ample. It is, in fact, generous, but we do not find it unreasonable or an abuse of the trial court's much discretion. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Plaintiff has been serious about body building since he was in high school. Health and exercise are a priority with him. He is now 39 years old (at the time of trial) and works out four or five days a week for one or two hours regularly. He has belonged to numerous health clubs: Aquarius, Mid City Health Club, Lakeside Club and New Orleans Athletic Club. He also exercises at home with weights and has his own gymnasium. He was a member of defendant club when it was located on Camp Street, followed it to its Jackson Avenue location and finally to Metairie, where the club is now located.
Plaintiff was very satisfied with the facilities. He enjoyed working out there with many members who became his friends, and enjoyed the facilities which Martin was always expanding. Initially there was no swimming pool, suana, whirlpool or racquetball. The club was updated and expanded and plaintiff was very satisfied with what the club had to offer. What made it particularly attractive was that it was open seven days a week from early morning into the evening hours. Since it was only a few blocks from his home, the location was ideal.
For a person who is employed, two weeks, which defendant suggests, would be grossly inadequate for plaintiff to be able to find a comparable facility. In fact plaintiff has been a member of all of the other clubs mentioned above and they do not compare with defendant club, especially in view of the hours the facility stays open and the fact that it is close enough to his home for him to walk.
It is unlikely that plaintiff will be able to find any comparable facility. However, he is entitled to be compensated for the total lack of notice, which constitutes breach of contract on the part of defendant.
*384 The award was based on the cost of two years' dues at the Mid City facility, which plaintiff stated cost $574.97 the first year, $550 for renewal. The total cost would amount to $1,124.97. This does not take into account the cost of transportation four or five times per week to use the other facility, or the amount of time necessary to get back and forth to use the club, which would affect the amount of time plaintiff would have to exercise.
Considering all of the above factors, and particularly in view of plaintiff's dedication to his exercise program, we do not regard an award of $1,124.97 excessive.
We do, however, agree with appellant's fourth contention.
Since the court found that plaintiff had a lifetime contract, it made an additional award for sums plaintiff had paid in 1969 ($150), 1970 ($180), 1971 ($180), 1974 ($180), and 1977 ($180) = $870. According to plaintiff's testimony those amounts were not for his dues. Part of the money was for his father's dues; he paid dues for his wife at times, and made contributions to the club when a member might be competing in an athletic contest and things of that nature.
Plaintiff did not ask for the return of these funds and he is not entitled to them.
We find no merit in plaintiff's answer to the appeal. It is his position that he is entitled to an award of $19,096, based upon his life expectancy for cancellation of a lifetime contract. The sum which he seeks was based upon an actuarial report introduced in evidence.
As we have stated earlier, lifetime contracts are illegal in this State, and are treated as contracts for an indefinite time, terminable at will by either party upon giving reasonable notice. Hence plaintiff is not entitled to the additional award which he seeks.
For the reasons assigned the judgment appealed from is amended to reduce the award from the sum of $1,994.97 to the sum of $1,124.97. In all other respects the judgment appealed from is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] "Neils" (Ebert C.) Martin is not a party to this appeal. The suit against him was dismissed when it was established that the owner was Martin's School of Judo, Jujitsu, Inc., d/b/a Crescent City Health Club.
[2] In 1982 the Louisiana Legislature enacted the Physical Fitness Service Act, R.S. 51:1576-1582, to curb a number of abuses which had become widespread in that industry. The act prohibits lifetime contracts. Plaintiff's contract, entered into in 1966, supersedes this act.