528 So.2d 198 (1988)
STATE of Louisiana, ex rel. William J. GUSTE, Jr., Attorney General
v.
ORKIN EXTERMINATING COMPANY, INC.
No. CA 6995.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1988.
Rehearing Denied August 2, 1988.
*199 Patricia J. Hakes, Sp. Asst. Atty. Gen., New Orleans, for plaintiff.
John R. Schupp, Karen M. Worthington, Broadhurst, Brook, Mangham & Hardy, New Orleans, for defendant.
Before BYRNES and ARMSTRONG, JJ., and PRESTON H. HUFFT, J. Pro Tem.
ARMSTRONG, Judge.
The State of Louisiana filed suit against defendant, Orkin Exterminating Company, Inc., ("Orkin") alleging that Orkin's unilateral increase in renewal fees under a fixed-price contract and conduct incident thereto constituted deceptive and unfair trade practices under La.R.S. 51:1405 et seq. The matter was tried before a commissioner whose findings were later adopted by the trial court. Orkin appeals the trial court's judgment in favor of the State of Louisiana ordering that Orkin be required to: refund renewal fees collected in excess of the contractual amount, with interest; roll back renewal fees billed in the future to the contractual amount; and offer to reinstate any former customer who held a pre-1975 contract at the time of the fee increase who would agree to pay Orkin his total arrearage in renewal fees within one year of Orkin's offer.
We affirm the trial court's order because we find that it is reasonably related to the violations found to exist. We also affirm the trial court's judgment as it is supported by the facts and there is no manifest error.

FACTS
Between January 1, 1966 and February 1, 1975, Orkin contracted with thousands of Louisiana customers for treatment and control of wood destroying organisms. The contracts, (hereinafter "pre-1975 contracts"), offered pest control and repair services with guarantees for the lifetime of the treated structure so long as the customer paid a specified annual renewal fee. Also during this period, Orkin used advertising, sales materials and sales training literature which stated that the annual renewal fee would not increase for the life of the covered structure. The contracts at issue made no provision for increases in the annual renewal fee except where the structure was altered after treatment. In August, 1980 Orkin began billing the pre-1975 customers for annual renewal fees at increased rates above those stated in their contracts by 40% or $25.00, whichever was greater. Customers complained to Orkin and an "accomodation program" was instituted to address their concerns. The program involved form letters sent to complaining customers to explain and justify the fee increase and some limited exceptions were made to its across-the-board increases in the renewal fees for pre-1975 contracts.
In 1981, subsequent to an investigation by the Attorney General, and the Louisiana Office of Consumer Protection, Orkin rolled back the renewal fees of all customers with contracts executed in 1968, stating that it had just discovered that advertising used in 1968 might have led customers to *200 believe that their annual renewal fee could not be increased. Orkin continued to implement the fee increase for other pre-1975 customers. When customers persisted and sent Orkin the amount stated in their contract, it was Orkin's policy to return it. From 1981-1984, Orkin obtained from $525,000.00 to $600,000.00 from Louisiana customers who paid the renewal fee increases.
On February 8, 1983 the State of Louisiana, acting through the Attorney General, filed suit seeking preliminary and permanent injunctions prohibiting Orkin from raising the annual renewal fees or breaching any duty established in its advertising or contracts with customers. It also requested that Orkin reinstate the original renewal rate on fixed payment contracts still in effect and to refund overcharges with interest. On June 12, 1984, the trial court entered a preliminary injunction ordering Orkin to refrain from charging an annual fee higher than that stated in the contract to any contract holder who at the time suit was filed possessed a fixed contract or one similar thereto, or otherwise breaching any duty established by Orkin in its advertising or consumer contracts. The trial court denied the other preliminary relief requested by the State.
On February 6, 1985 the trial court overruled the defendant's exception of No Cause of Action. On the same day defendant's exception of Prescription was referred to the merits.
The case proceeded to trial before the Commissioner for the Civil District Court for the Parish of Orleans. The exception of Prescription was overruled. The Commissioner found that Orkin was liable under the Louisiana Unfair Trade Practices and Consumer Protection Law and recommended that an order be issued enjoining Orkin from engaging in the illegal practices alleged by the State, and requiring Orkin to refund overpayments with interest to its customers. The Commissioner also recommended that Orkin be required to offer consumers who were billed increased amounts, but did not pay them, full services pursuant to their contracts, upon payment within a reasonable time of any unpaid contractual renewal fees for the years including and subsequent to the illegal increases. The recommendations of the Commissioner were adopted by the trial court and judgment was rendered in favor of the State. Orkin's request for a new trial was denied. On appeal, Orkin maintains that the trial court erred:
1) in finding that the term of the pre-1975 termite contracts is for the lifetime of the structure,
2) in finding that the term of the pre-1975 termite contracts was for a definite period,
3) in finding that Orkin engaged in practices forbidden by Louisiana's Unfair Trade Practices and Consumer Protection Law,
4) in finding that Orkin's representations of its attorneys' opinions violated La.R.S. 51:1401 et seq.,
5) in awarding interest to customers with pre-1975 contracts,
6) in extending its judgment to those who no longer have contracts with Orkin,
7) in retroactively applying Louisiana's Unfair Trade Practices and Consumer Protection Law,
8) in overruling Orkin's exception of Prescription.
Orkin appeals from the trial court's judgment that their conduct violated Louisiana's Unfair Trade Practices and Consumer Protection Law. We are therefore obligated to review the facts to determine whether they support the judgment rendered. The standard used on review is that of "manifest error". Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Orkin also maintains that the trial court exceeded its powers in issuing the order. The order must be reasonably related to the violations found to exist. F.T.C. v. National Lead Co., 352 U.S. 419, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957); Jacob Siegel Co. v. F.T.C., 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888 (1946).
Louisiana's Unfair Trade Practices and Consumer Protection Law is modeled after the Federal Trade Commission Act ("FTCA") and the federal jurisprudence under the FTCA is incorporated into the Louisiana *201 statute. We find it compelling that the Federal Trade Commission has decided a case of the same facts as the instant case and that the reasoning and conclusion of that opinion is consistent with that made in the district court.[1]
In 1980, the FTC issued a Policy Statement on Unfairness which laid out a tripartite test for identifying unfair trade practices, the focus of which is consumer injury. The Federal Trade Commission articulated the elements to be measured as quantum of injury, countervailing benefits and the economic forces at work. The FTC has applied this standard to subsequent cases to find liability under their Act.[2]
On considering the facts of this case the Administrative Law Judge applied the FTC standard, finding that Orkin's increase of its annual renewal fees has caused substantial, ongoing and unavoidable injury to Orkin's customers and the public, and that it is not outweighed by countervailing benefits to consumers or competition. These findings were upheld by the FTC. We are convinced that this outcome is correct.

Assignment of Error Numbers One and Two
Orkin contends that the Commissioner erred in finding that the term of the pre-1975 termite contracts was for a "lifetime", and thus, for a definite period. Orkin argues instead that the term of these contracts was for an indefinite period, and therefore, they were terminable at the will of either party upon "reasonable notice". See generally Daily States Publishing Co. v. Uhalt, 169 La. 893, 126 So. 228 (1930); Jones v. Crescent City Health and Racquetball Club. 489 So.2d 381 (La.App. 5th Cir.1986). Accordingly, Orkin argues, it committed no breach when it increased annual renewal fees upon two months notice to its customers. That breach formed the basis of the Commissioner's finding Orkin to be in violation of La.R.S. 51:1405 et seq. Thus, Orkin argues, because there was no breach of contract, a breach of contract could not form the basis for its violation of La.R.S. 51:1405 et seq. as found by the Commissioner. However, we agree with the Commissioner that the contract term was for a definite period and, thus, we are not persuaded by Orkin's argument.
A contract for the lifetime of the structure is for a definite and ascertainable period. Contractual obligations dependent on an ascertainable fact or event is sufficient to render the duration of the contract definite and certain. Contracts may be uncertain as to point of time when they will terminate, so long as there is no uncertainty as to the event which will bring about their termination. Fuchs v. United Motor State Co., 135 Ohio St. 509, 21 N.E.2d 669, 672 (1939) accord Pallange v. Mueller, 206 Wis. 109, 238 N.W. 815 (1931) 17 Am.Jur.2d § 80.
Orkin cites Baynard v. Guardian Life Ins. Co. of America, 399 So.2d 1200 (La.App. 1st Cir.1981) and Jones, supra to support the proposition that a contract for a lifetime is a valid contract of indefinite duration; however these cases are distinguishable. Both lifetime contracts for employment and health club memberships are not enforced as definite contracts by legislative act. See La.R.S. 51:1578; La.Civ. Code arts. 167 and 2746. There is no legal basis for Orkin's assertion that lifetime contracts are indefinite and will not be specifically enforced in Louisiana. In Strange v. Imperial Pools, Inc., 520 So.2d 1039 (La.App.3d.Cir.1987), defendant's exception of Prescription was overruled and it was found liable under a lifetime warranty on a swimming pool when the steel walls rusted. Thus, we find no error in the Commissioner's finding that Orkin's increase of the fixed renewal fee constituted breach of a definite contract.

*202 VIOLATIONS OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

Assignment of Error Number Three
Orkin contends that a mere breach of contract cannot constitute an unfair trade practice. Orkin focuses on a number of state court decisions which support the proposition that private controversies arising out of simple breaches of contracts do not violate the statute. However, this is not a dispute between private parties. The Federal Trade Commission characterized the conduct at issue in this proceeding as "a widespread, systematic program implemented by Orkin to effect a unilateral modification of its own standard contract terms agreed to by many thousands of consumers". In the Matter of Orkin Exterminating Co., Inc., No. 9176, slip op. (F.T.C. Feb. 25, 1987). In this context, the FTC found a breach of contract sufficient to constitute an unfair trade practice.[3]

Assignment of Error Number Four
Orkin takes issue with the Commissioner's finding that misrepresentations made by Orkin's employees violated the Act. Orkin argues that (1) these representations were made before 1972 and thus to rely on these representations would require the court to apply La.R.S. 51:1401 et seq. retroactively; and (2) the contracts specifically restrict their terms to the written documents so that these representations can not be considered in finding a violation of the Act. We discuss whether the statute can be retroactively applied later in this opinion.
It is true that the Commissioner did find that the representations made by Orkin's sales personnel to potential customers and that the representations made in advertising directed toward potential customers constituted an unfair trade practice.[4] However, the Commissioner did not rely solely on these representations to find that Orkin violated the Act. Rather, the representations, together with Orkin's subsequent raising of the annual renewal fees, were a separate and independent finding and were not used to establish a breach of contract. Thus, because we have found that the contractual breach itself constitutes a violation of the Act, we need not address whether the Commissioner erred in finding that the representations made, together with the subsequent annual renewal fee increases, comprised a violation of the Act.

Assignment of Error Number Five
Orkin argues that this suit is a disguised private action and as such its remedy is governed by La.R.S. 51:1409. This contention has no merit. The Attorney General is primarily acting in his capacity in enforcing the consumer protection law for the benefit of the public, a government function. His request for restitution is only ancillary as opposed to most private class actions where it is the primary purpose *203 of the lawsuit. People v. Pacific Land Research Co., 20 Cal.3d 10, 141 Cal. Rptr. 20, 569 P.2d 125 (1977). The Attorney General has authority to request restitution if the consumers are entitled to be compensated and the trial court can order restitution when a compensable loss is established. The very reason that this suit arises as a La.R.S. 51:1407 cause of action is that, individually, consumers are unlikely to have sued Orkin and this wrong would not otherwise have been vindicated. A major objective of the act, is to offer the consumer an avenue for vindicating wrongs forced upon them by oppressive corporations. Boren, The Louisiana Unfair Trade Practice and Consumer Protection Act: An Analysis, 34 La.L.Rev. 634 (1980).
Orkin maintains that they should not be ordered to pay interest since they did not "acquire" it as required by the statute. This reading of La.R.S. 51:1408 is inapposite to its meaning. It is clear that the statute contemplates total restitution. Orkin is not being required to return interest that they charged but to pay interest that has been acquired through the use of consumer monies that Orkin collected and was not legally entitled to. These consumers were deprived of the use of their money and an interest award is the only way Orkin's customers may be returned to the status quo and made whole. Failure to award interest would allow Orkin to profit from its wrong-doing, which offends the public policy against unfair and deceptive trade practices. We agree with the State that Orkin should not be allowed to retain benefits, accurately described as ill-gotten gain, derived from its breach of contract.

Assignment of Error Number Six
Orkin argues that the reinstatement of pre-1975 termite customers exceeds the injunctive remedy that the State is entitled to seek, and that it is impossible to determine whether these customers terminated as a result of the violation. Orkin contends that the order is overbroad because (1) it should not be liable to persons who were not affected by its practices; (2) it is punitive because it operates as a windfall to that group of customers who have failed to pay the required renewal fee while placing an inequitable burden on Orkin; and (3) it is not injunctive.
Initially, we note that where injunctive actions are brought by the state, Louisiana's Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1408 allows the court to issue additional orders or render judgments against any party, as may be necessary to compensate any aggrieved person for any property, movable or immovable, corporeal or incorporeal, which may have been acquired from such person by means of any method act or practice declared unlawful by La.R.S. 51:1405. See Boren, The Louisiana Unfair Trade Practice and Consumer Protection Act: An Analysis, 34 La.L.Rev. 634, 635 (1980); Zimmering, Louisiana's Consumer Protection LawThree Years of Operation, 50 Tul.L.Rev. 375, 386 (1976). Under this section, restitution, as compensation to an aggrieved party, may be sought in deceptive trade practice cases. State ex. rel. Guste v. General Motors Corp., 354 So.2d 770 (La.App. 4th Cir.1978), aff'd and remanded 370 So.2d 477 (La.1979). We find no error in the trial court's ordering restitution under these facts.
The Commissioner acknowledged that some of Orkin's pre-1975 customers may have terminated their relationship with Orkin for reasons other than the increased renewal fees. However, the Commissioner concluded that because Orkin's breach of contract was active, and tender on the part of the customer was a futile act because Orkin's policy was to return checks submitted in the amount of the contract price, Orkin must offer to reinstate contracts for all pre-1975 customers who are no longer on its active customer list. The Commissioner reasoned, "[h]owever, only those to whom the fixed renewal fee is important are likely to request reinstatement since the court will require that they agree to pay Orkin, within one year, several year's arrearage in renewal fees". The Commissioner added that his purpose in fashioning the order in that way was to give the customers a reasonable time to pay without *204 giving them a windfall. It is apparent that the Commissioner pre-empted Orkin's arguments, and we agree that this remedy is best adapted toward offering Orkin's pre-1975 customers complete restitution. It is not punitive, but merely consistent with La.R.S. 51:1408's grant of additional relief.
As to this aspect, the order issued in this state differs from the Federal Trade Commission's order which was pursuant to a summary judgment. The Federal Trade Commission entertained FTC counsel's request to order Orkin to reinstate all the pre-1975 customers who cancelled their contracts since the 1980 fee increase or at least those customers who cancelled during the first year after the increase. The rationale FTC counsel offered was that it is inconsistent to order Orkin to give refunds to consumers who actually paid the increased renewal charges without reinstating consumers that refused to pay. However, the Federal Trade Commission declined to reinstate pre-1975 customers. The FTC explained, "had the matter gone to trial, we might have imposed the relief that they requested." Here, where the Commissioner had the benefit of evidence at trial to determine whether customers cancelled contracts as a result of the fee increase we find no manifest error. Such an award is within the broad powers of restitution, adapted to give relief when due, yet narrowly drawn so as to be equitable.

THE EXCEPTIONS

Assignment of Error Number Seven
Orkin appeals the Commissioner's ruling on its Exception of No Cause of Action because to find that Orkin violated La.R.S. 51:1401 et seq. would require a retroactive application of the Act to pre-enactment conduct. The Act became effective in 1972 and the significant majority of the contracts were issued between 1966-1972. Orkin contends that this is necessarily creating a new liability in connection with a past transaction. Orkin's argument assumes that the trial court's sole basis for finding that Orkin committed an unfair trade practice was the representations made to customers prior to the passage of the Act. However, it is not necessary for the court to rely on pre-act conduct or on post-act misrepresentations of Orkin's attorneys to find that Orkin violated the Act. The Commissioner stated specifically that the breach of contract constituted an unfair trade practice and looked to the language contained in the contract and the obligations it established to conclude this. The breach of contract occurred in 1981, subsequent to the effective date of the Act.

Assignment of Error Number Eight
Orkin appeals the Commissioner's ruling on its exception of Prescription. Again Orkin relies on the contention that this is a disguised private action and that the Attorney General is acting as a representative for individuals, against whom the prescriptive period is one year. La.R.S. 51:1409. We refer Orkin to our earlier discussion regarding the role of the Attorney General as a real party in interest, serving a government function by enforcing the statute.
Orkin also contends that it was an oversight in the Legislature not to include language assigning a prescriptive period for actions brought by the Attorney General. This is not the case. It was contemplated that prescription would not run against the Attorney General. See Zimmering, Louisiana's Consumer Protection LawThree Year's of Operation, 50 Tul.L.Rev. 375, 386 (1976).
For the above and foregoing reasons the judgment of the trial court is affirmed.
NOTES
[1] See In the Matter of Orkin Exterminating Co., Inc., No. 9176, slip op. (F.T.C. Feb. 25, 1987).
[2] The standard the Commission uses, in considering whether conduct is unlawful as an unfair act or practice, is whether the consumer injury is (1) substantial; (2) not outweighed by any offsetting consumer or competitive benefits that the practice produces; and (3) one that consumers could not reasonably have avoided. International Harvester Co., 104 FTC 949, 1061 (1984); Amrep Corp., 102 FTC 1362, 1669 (1983); Horizon Corp., 97 FTC 464, 847 (1981).
[3] Louisiana courts give great deference to determinations of unfair trade practices by the Federal Trade Commission. Guste v. Demars, 330 So.2d 123 (La.App. 1st Cir.1976); Gour v. Daray Motor Co., Inc., 373 So.2d 571 (La.App. 3rd Cir.1979), writ granted 376 So.2d 1270, writ dismissed 377 So.2d 1033 (La.1979); Moore v. Goodyear Tire and Rubber Co., 364 So.2d 630 (La.App. 2nd Cir.1978). In Federal Trade Commission v. R.F. Keppel and Bro., 291 U.S. 304, 314, 54 S.Ct. 423, 427, 78 L.Ed. 814 (1934), the U.S. Supreme Court explained why it is proper to take this posture.

While this Court has declared that it is for the courts to determine what practices or methods of competition are to be deemed unfair, Federal Trade Commission v. Gratz [253 U.S. 421, 40 S.Ct. 572, 64 L.Ed. 993 (1920)], supra, in passing on that question the determination of the Commission is of weight. It was created with the avowed purpose of lodging the administrative functions committed to it in "a body specially competent to deal with them by reason of information, experience and careful study of business and economic conditions of the industry affected," and it was organized in such a manner, with respect to the length and expiration of the terms of office of its members, as would "give to them an opportunity to acquire the expertness in dealing with these special questions concerning industry that comes from experiences."
[4] The representations made by Orkin sales personnel and those made in Orkin's advertising as inducements to potential customers, were that the annual renewal fee would remain fixed for the life of the structure.