536 So.2d 444 (1988)
Randall E. CARLSON, Jr., Appellant,
v.
SUPERIOR SUPPLY COMPANY, Appellee.
No. 20038-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1988.
Writ Denied January 20, 1989.
Cook, Yancey, King & Galloway by F. Drake Lee, Jr., Shreveport, for appellant.
Walker, Tooke, Perlman & Lyons by S. Judd Tooke and Walter F. Clawson, Shreveport, for appellee.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
Randall Carlson, Jr. appeals from the judgment denying his claim against his former employer, Superior Supply Company, for six months' salary, penalties and attorney's fees. We affirm.
Carlson went to work for Superior Supply Company ("Superior") in May of 1980 as a salesman. The duration of his employment was indefinite. After approximately two years and three months, he was promoted to executive vice-president. Superior's sole stockholder is NWS Supply Group, Inc., a wholly owned subsidiary of Thomas Tilling, plc, a British company. In the spring of 1983 Carlson and other executives at Superior learned of an attempt by another corporation, BTR, plc, to take over Thomas Tilling. On May 3, 1983 Superior's executive committee authorized Superior to enter into agreements with certain of Superior's executives that regulated the termination of their employment. Carlson was not a member of Superior's executive committee, although he was a member of Superior's Board of Directors.
Carlson received an agreement dated May 3, 1983, and signed it on May 4, 1983. The agreement[1] provided that Carlson would not be terminated without receiving either six months' notice of termination or payment of six months' salary; and Carlson agreed that he would not leave Superior without providing at least six months' notice.
Around June 9 of 1983 BTR acquired control of Thomas Tilling. In mid June of *445 that year agents of BTR began to become involved in the management of Superior. Shortly after September 19, 1984 Carlson received a memo of that date from Alan Reid, president of NSW Supply Group, advising that the employment contracts dated May 3, 1983 were cancelled.
Carlson continued to serve as executive vice-president of Superior until June of 1986, when he was terminated with no notice. Superior tendered him six weeks' severance pay along with his accrued vacation pay.
Carlson filed suit contending that under the May 3 agreement he was owed six months' salary together with statutory penalties and attorney's fees. The trial judge found that Superior validly cancelled the May 3 agreement, and that since Carlson's employment was one of indefinite term it was subject to termination at will.
Plaintiff appeals, urging that C.C. art. 2024 does not apply because the agreement was still in effect. For the excellent reasons[2] expressed by the trial judge, which we adopt in full, and the reasons set forth below, we affirm.
When Carlson was first employed by Superior, his employment was for an indefinite term and therefore terminable at the will of either the employer or the employee. C.C. art. 2747;[3]Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App.2d Cir.1982). However, the agreement of May 3, 1983 purported to modify the right of terminating at will by providing for six months' notice of termination. See Williams v. Delta Haven, Inc., supra. For the purposes of this opinion we assume, but do not concede, that the May 3, 1983 agreement was valid.[4]
The initial question is whether this agreement was still in effect in June of 1986. It stated no definite term; it said only that the Board desired his services "now and in the future." While it made provisions for terminating Carlson's employment (six months' notice), it made no provision for terminating the agreement itself. The term of the agreement was of unspecified duration.
*446 A contract for an indefinite period is terminable at the will of either party upon giving reasonable notice. C.C. art. 2024[5]; Jones v. Crescent City Health & Racquetball Club, 489 So.2d 381 (La.App. 5th Cir. 1986); Caston v. Woman's Hospital Foundation, Inc., 262 So.2d 62 (La.App. 1st Cir.1972), writ denied 262 La. 1087, 266 So.2d 220 (La.1972). Superior exercised its right of termination on September 19, 1984. The trial court concluded that Carlson received notice of the termination and that the notice given (from September of 1984 to June of 1986) was reasonable. This finding was not clearly wrong under the circumstances of this case.
The trial court was correct in concluding that the May 3, 1983 agreement was terminated by Superior. Carlson's employment was one of indefinite term, subject to termination at will absent a specific agreement to the contrary. We find neither error of law nor manifest error of fact.
Finding no merit in appellant's assignment of error, we affirm. Costs of this appeal are assessed to the appellant.
AFFIRMED.
NOTES
[1] The Board of Directors of Superior Supply Company (the "Company") recognizes that your contributions to the past and future growth and success of the Company have been substantial. The Board therefore desires to assure the Company of your continued services for the benefit of the Company now and in the future.

This is to confirm our agreement that the Company will not terminate your employment (other than for disability or retirement) unless it provides you with six months' notice of termination or, at its option, pays you an amount equal to your salary for that number of months. In return, your signature below indicates your agreement that you will not leave the employment of the Company voluntarily unless you provide at least six months' prior notice to the Company.
If the foregoing correctly sets forth our understanding with you, please sign in the space indicated below and return one copy to me.
[2] The court's opinion read in part as follows:

* * * * * *
The employment contracts like those involved in the instant case have been referred to as "golden parachute" contracts. There are several excellent law review articles dealing with "golden parachute" contracts. Among them are "Golden Parachutes and the Business Judgment Rule: Toward a Proper Standard of Review", The Yale Law Journal, March 1985, Volume 94, Issue 4; "Anti-Takeover Actions and Defenses: Business Judgment or Breach of Duty?", Villanova Law Review, 1982-83, Vol. 28; "On Golden Parachutes-Ripcords or Ripoffs? Some Comments on Special Termination Agreements", Pace Law Review, 1982, Vol. 3:15; and "Golden Parachutes: A Perk that Boards Should Scrutinize Carefully", Marquette Law Review, 1984, Vol. 67:293.
These articles argue that such contracts may or may not be enforceable depending on a number of factors.
It is not necessary for the Court to determine if the contract was enforceable at some prior time because the facts of the case make it clear that the contract was legally cancelled by Superior Supply Company. Article 2024 of the Louisiana Civil Code states that a contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form to the other party. The contract in question was one of unspecified duration. Therefore, either party had the right to terminate it by giving notice, reasonable in time and form. Superior Supply Company took such action in the fall of 1984, as shown by Defendant's Exhibit 8. Plaintiff acknowledged at trial that he received a copy of Defendant's Exhibit 8 at that time.
Since the contract was cancelled by Superior Supply Company in the fall of 1984 upon giving reasonable notice in time and form to plaintiff, it was no longer in effect when plaintiff was terminated in June of 1986.
* * * * * *
[3] Art. 2747. Contract of servant terminable at will of parties

A man is at liberty to dismiss a hired servant attached to his person or his family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
[4] Superior questions the agreement's validity, alleging that it is a "Golden Parachute" contract, and also that Carlson had a fiduciary relationship with Superior as a member of its Board of Directors, which he breached by entering into the agreement. As the trial court noted, it is not necessary to discuss the validity of the agreement, because we find it was terminated before June 1986.
[5] Art. 2024. Contract terminated by a party's initiative

A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party.