United States Court of Appeals
Fifth Circuit

**F I L E D**

August 6, 2008

Charles R. Fulbruge III
Clerk

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 07-30598

INNOVATIVE SALES LLC,

Plaintiff-Appellant,

v.

NORTHWOOD MANUFACTURING INC; NORTHWOOD OF VIRGINIA LLC; NORTHWOOD INVESTMENTS, LLC,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:05–CV–1407

Before GARWOOD, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:*

Innovative Sales LLC ("Innovative") filed this diversity action alleging that Northwood Manufacturing, Inc., Northwood of Virginia LLC, and Northwood Investments, LLC (collectively, "Northwood") breached their travel-trailer agreement and engaged in unfair and deceptive trade practices in violation of Louisiana law. The district court granted Northwood's motion for summary judgment, and Innovative appealed. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

To market its travel trailers, Northwood offers "franchise" or "territory" agreements to various dealers around the country. In 2004, Northwood entered into such an agreement with Innovative. The handwritten agreement, titled "DEALER AGREEMENT FOR INNOVATIVE SALES W/ NORTHWOOD MANUFACTURING," reads in full as follows:

> The territory for Innovative Sales, L.L.C. is bordered on the North by the Mississippi state line that is south of Alexandra [sic], La.; the Eastern limit is the Mississippi state line; the South limit is I-10 at the I-55 intersection & North of the I-12 & I-10 which is North of Lake Ponthartrain [sic]; the West limit includes Lafayette, LA & New Iberia.
>
> No new dealer shall be established in New Orleans, LA before 10-30-2004 or after with an initial stocking order of less than 10 units. Furthermore[,] Innovative Sales, LLC will have an opportunity to preclude a New Orleans dealer from opening by making a stocking order which will match the order of a prospective New Orleans dealer.
>
> Innovative Sales agrees to innitially [sic] stock 2 units and to increase the stocking inventory by an additional 2 units per month untill [sic] a standard stocking inventory of 10 units is reached. If the minimum stocking inventory requirements are not met, then Northwood Mfg. may sign other dealers in the territory serviced by Innovative Sales.
>
> This agreement applies to all Northwood Mfg. products.

Innovative alleges that after about a year, Northwood asked Innovative to sell the trailers at higher prices due to other dealers' complaints about losing business to Innovative, and that when Innovative refused, mutual animosity developed. Innovative further alleges that when it ordered as many FEMA trailers as were available following Hurricane Katrina, Northwood misrepresented that it could not comply because it had received a large order from another dealer, Bourget's of the South, LLC ("Bourget's"), although the real reason was residual "personal animosity." Such was the case, Innovative claims, even though Bourget's was not a licensed dealer under Louisiana law, was not a franchisee of Northwood, was paying Northwood inflated prices, was located

within Innovative's exclusive coverage area, and was allowed to place an order that Innovative had no opportunity to match. As a result of these events, Innovative filed a diversity action in the district court alleging that Northwood's actions, undertaken in bad faith, breached the terms of their contract. Innovative also argued that these same actions violated the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA").

Northwood then filed a motion for summary judgment, which the district court granted for the following reasons. First, the district court found no breach of contract because the agreement clearly demonstrated that Innovative's and Bourget's territories did not overlap, and because the unambiguous nature of the terms rendered Innovative's parol evidence for the purpose of proving intent inadmissible. Second, the district court held that "because . . . [Northwood's] conduct did not breach the contract with [Innovative], [Northwood] clearly ha[d] not engaged in unfair trade practices vis-a-vis [Innovative]." Innovative appeals.

## II. STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed de novo. Hall v. Gillman Inc., 81 F.3d 35, 36 (5th Cir. 1996) (citing Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1065 (5th Cir. 1995)). Summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The movant bears the initial burden of "'demonstrat[ing] the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the movant meets this burden, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S. at 325). During this process, "factual controversies [are resolved] in favor of the nonmoving party, but only when there is an actual controversy, that

is, when both parties have submitted evidence of contradictory facts." Id. The materiality of facts depends on the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III. DISCUSSION

Innovative alleges that the district court erred in granting summary judgment in favor of Northwood by: (1) accepting Northwood's statement of uncontested facts as uncontested; (2) disregarding the agreement's "implied obligations"; (3) disregarding Northwood's violation of the duty of good faith; (4) determining that Northwood had not breached the agreement's express terms; and (5) determining that Northwood had not engaged in unfair trade practices.

### A. Northwood's Statement of Uncontested Facts

Innovative first argues that the district court erroneously determined that Northwood's statement of uncontested facts was "uncontested and deemed admitted." This characterization is inaccurate. In its Ruling on Motion for Summary Judgment, the district court initially sets out Northwood's alleged "uncontested facts," commenting that "[s]ome of these 'facts' are immaterial while others are not facts at all—they are conclusions of law." Next, the district court sets out Innovative's purported "contested facts," noting that "[t]he large majority of these 'facts' are not facts at all—they are issues put before the court." The district court then sets out and explains Local Rule 56.2 by providing that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of this motion, unless controverted as required by this rule."

After that, however, the district court never mentions the facts that it—as opposed to the parties—considers controverted or uncontroverted and never holds that Northwood's statement of uncontested facts is indeed uncontested. Rather, the district court goes on to explain that the contract is clear and

unambiguous, and that based on the plain language, Northwood did not breach the agreement or engage in unfair trade practices. Accordingly, the district court did not erroneously accept Northwood's statement of uncontested facts as uncontested.[1]

## B. Implied Obligations

Innovative also contends that the district court erred by "analyz[ing] only the express provisions of the contract." Instead, Innovative claims, the court should have considered how Northwood breached the "implied obligations" of the agreement by selling trailers to an unlicensed dealer[2] within Innovative's exclusive territory, by refusing to deliver trailers in reasonable quantities to Innovative, and by coercing or attempting to coerce Innovative into lowering its prices. To support this argument, Innovative cites Louisiana Civil Code article 1768 for the proposition that "[c]onditions may be either expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties," and also relies upon various sections of Louisiana Revised Statute 32:773.1 (the Louisiana State Motor Vehicle statute) and several Louisiana cases.

---

[1] Furthermore, even if the district court had accepted Northwood's statement of uncontested facts as uncontested, Innovative's claim that "the factual foundation of Northwood's summary proceeding is false" is foreclosed. In its supplemental reply brief, Innovative points out that Northwood's statement of uncontested facts cites a judgment of the 19th Judicial District Court, in the matter of Bourget's of the South, L.L.C. v. La. State Recreational & Used Motor Vehicle Comm'n, No. 541-552, as final authority for the proposition that Bourget's was a licensed dealer during the pertinent time period. Innovative claims that this constitutes a material misrepresentation of fact because the Louisiana First Circuit Court of Appeal later reversed that judgment. However, pursuant to a March 11, 2008, order of the 19th Judicial District Court, brought to our attention in Northwood's Federal Rule of Appellate Procedure 28(j) letter, the Louisiana First Circuit Court of Appeal's decision was vacated as an absolute nullity due to the State Recreational and Used Motor Vehicle Commission's intervening ruling that Bourget's did have at all times relevant to this dispute a proper license under Louisiana law.

[2] As discussed supra, note 1, it is now a fact that Bourget's was a licensed dealer during the events at issue.

None of this authority supports the extra-contractual obligations that Innovative asks this court to read into the agreement. First, as Northwood points out, it is untenable to baldly assert that statutes, regulations, and ordinances typically regulated by governmental bodies or administrative agencies are included as implied obligations in every Louisiana private contract.

Second, the cases upon which Innovative relies stand at most for the following principle:

> Into all contracts . . . good faith performance is implied. Furthermore, everything that by equity is considered incidental to the particular contract, or necessary to carry it into effect, is also a part of all agreements. And . . . equity will supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from that source.

Nat'l Safe Corp. v. Benedict & Myrick, Inc., 371 So. 2d 792, 795 (La. 1979). In this case, however, the parties agree that an implied duty of good faith exists and address that theory as an independent issue. Moreover, an experienced dealer like Innovative cannot reasonably expect equity to supply terms from outside ordinances and regulations to which the parties never agreed. While such arguments may present issues between Northwood and the State of Louisiana, they are immaterial to Innovative's private breach of contract claims. As a result, the district court did not erroneously disregard the agreement's "implied obligations."

C. Duty of Good Faith

Innovative separately asserts that Northwood's actions breached the implied duty of good faith. It is true that "[g]ood faith performance is an implied requirement of every contract under Louisiana law." Grisaffi v. Dillard Dep't Stores, Inc., 43 F.3d 982, 983 (5th Cir. 1995) (citing LA. CIV. CODE ANN. art. 1983). This duty, however, applies only to obligations related to the specific contractual duties. See Jones v. Honeywell Int'l, Inc., 295 F. Supp. 2d 652, 672 (M.D. La. 2003) (holding that because the plaintiff "allege[d] a general obligation

6

unrelated to any contractual duty, she ha[d] not properly stated a cause of action" for breach of the implied duty of good faith under Louisiana Civil Code article 1983). The good faith requirement does not allow a party to read into the contract additional obligations not contained therein.

As the district court held in ruling on Northwood's motion for summary judgment:

> The document (1) does not set forth what actions are permitted or prohibited within the territories; (2) does not obligate [Northwood] to sell any specific number of trailers to [Innovative]; and (3) does not forbid [Northwood] from selling trailers to Bourget's in [Innovative's] "exclusive" territory (assuming that [Northwood] did, indeed, do so).

Moreover, Innovative has failed to set forth any competent evidence that Northwood did not perform the specified contractual duties in good faith. Accordingly, the district court did not err in finding that Northwood did not violate the duty of good faith.

D. Express Obligations

Innovative further claims that the same actions that allegedly violated the agreement's "implied obligations" also violated the agreement's express terms. This argument, too, is unavailing. The first paragraph of the Innovative-Northwood agreement sets forth Innovative's territory as follows:

> The territory for Innovative Sales, L.L.C. is bordered on the North by the Mississippi state line that is south of Alexandra [sic], La.; the Eastern limit is the Mississippi state line; the South limit is I-10 at the I-55 intersection & North of the I-12 & I-10 which is North of Lake Ponthartrain [sic]; the West limit includes Lafayette, LA & New Iberia.

The second paragraph restricts Northwood, in certain circumstances, from establishing a new dealer in "New Orleans":

> No new dealer shall be established in New Orleans, LA before 10-30-2004 or after with an initial stocking order of less than 10 units. Furthermore[,] Innovative Sales, LLC will have an opportunity to preclude a New Orleans dealer from opening by making a stocking order which will match the order of a prospective

7

New Orleans dealer.

Meanwhile, the Northwood-Bourget's agreement sets forth Bourget's territory as follows:

> beginning at a point south of intersection of I10 & I55 (LaPlace) East to Chalmette, South to Boothville, West to Houma, Northwest to Jeanerette thence East to the point of beginning. This territory shall exclude the Parish of New Orleans.

Based on this language, and on the map exhibit derived from it, we agree with the district court that "it is clear . . . that [the territorial descriptions] do not overlap," and that as a result, Northwood did not breach the contract by selling trailers to Bourget's within Innovative's alleged "exclusive" territory.[3]

Innovative attempts to avoid this straightforward reading by offering parol evidence that allegedly evidences an intent that the term "New Orleans" dealer includes the "the Greater New Orleans area" or "the metropolitan area of New Orleans," which is defined by the United States Census as "including the seven surrounding parishes of Orleans." As this court has noted, however:

> In general, under Louisiana law, extrinsic evidence cannot be used to "negate or vary" the unambiguous terms of a written contract. See Patterson [v. City of New Orleans], 686 So. 2d [87, 90 (La. Ct. App. 1996)]. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046; see also Steier v. Heller, 732 So. 2d 787, 792 (La. Ct. App. 1999) ("When the terms of a written contract are clear, unambiguous, and lead to no absurd consequences, parol evidence cannot be used to vary or explain the contract terms, and the parties' meaning or intent must be determined from the four corners of the contract"); Patterson, 686 So. 2d at 90. Only where a contract is ambiguous can a court base its interpretation on extrinsic evidence. See Patterson, 686 So. 2d at 90. A contract is ambiguous only if its terms are unclear or susceptible to more than one interpretation, or the intent of the parties cannot be ascertained from the language employed. See McDuffie v. Riverwood Int'l Corp.,

---

[3] Correspondingly, Northwood owed no opportunity to Innovative to match Bourget's order.

660 So. 2d 158, 160 (La. Ct. App. 1995).

Gebreyesus v. F.C. Schaffer & Assocs., 204 F.3d 639, 643 (5th Cir. 2000). Applying these principles here, we (like the district court) hold that the Innovative-Northwood agreement is clear and unambiguous: Innovative's territory does not encompass the City of New Orleans, and notwithstanding Innovative's argument to the contrary, "New Orleans" plainly means "the City of New Orleans." If a seasoned dealer like Innovative meant to secure a larger coverage area, it should have said so in the contract; it cannot ask this court to vary the explicit territorial provisions after the fact. Innovative's parol evidence is thus inadmissible, and given that the territory granted to Bourget's in the Northwood-Bourget's agreement specifically excludes the Parish of Orleans, it is likewise clear that Northwood did not breach the Innovative-Northwood agreement by selling trailers to Bourget's.

As for Innovative's misrepresentation-of-facts (regarding the availability of FEMA trailers) and price-coercion arguments, the terms of the Innovative-Northwood agreement do not require Northwood to sell a certain number of trailers to Innovative over a specific period of time, nor do they mention anything about pricing or pricing negotiations.[4] Consequently, Northwood did not breach the express terms of the agreement in those respects, either.

E. Unfair Trade Practices

Finally, Innovative argues that the same actions taken by Northwood that support a breach of contract claim also support a LUTPA claim. This argument, however, is foreclosed by Turner v. Purina Mills, Inc., wherein this court expressly acknowledged that LUTPA "does not provide an alternate remedy for

---

[4] We note that while Innovative's complaint charges Northwood with selling trailers to Bourget's at "different" or "inflated" prices, nowhere does the complaint allege a separate count of price fixing in violation of the Sherman Act § 1. Accordingly, to the extent Innovative attempts to do so, it may not raise an independent antitrust claim for the first time on appeal. See Little v. Liquid Air Corp., 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (stating that "plaintiffs may not advance on appeal new theories or raise new issues not properly before the district court to obtain reversal of . . . summary judgment").

simple breaches of contract," noting that "[t]here is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." 989 F.2d 1419, 1422 (5th Cir. 1993) (citing State ex rel. Guste v. Orkin Exterminating Co., 528 So. 2d 198, 202 (La. Ct. App. 1988)).

Innovative's contrary interpretation of Orkin is unpersuasive. Although in that case the state appellate court allowed both a breach of contract claim and an unfair trade practice claim, the court was careful to note:

> [The defendant] contends that a mere breach of contract cannot constitute an unfair trade practice. [It] focuses on a number of state court decisions which support the proposition that private controversies arising out of simple breaches of contracts do not violate the statute. However, this is not a dispute between private parties.

Orkin, 528 So. 2d at 202. The court reasoned that because the action was brought by the State as an enforcement action, the State had the right to bring an unfair trade practice claim based on the defendant's modification of the contract terms, which affected thousands of consumers. Id. Here, however, because the dispute is between two private parties, the rationale for the exception to the general rule does not apply.

Innovative's reliance on Capitol House Preservation Co. v. Perryman Consultants, Inc., is also misplaced. 725 So. 2d 523 (La. Ct. App. 1998). There, the only cause of action alleged was an unfair trade practice claim, and no contract existed between the parties. See id. at 524–26. As a result, there was no breach of contract claim in addition to a LUTPA claim as presented here. Accordingly, the district court did not err in concluding that "because . . . [Northwood's] conduct did not breach the contract with [Innovative], [Northwood] clearly ha[d] not engaged in unfair trade practices vis-a-vis [Innovative]."

## IV. CONCLUSION

Finding no error in the district court's grant of summary judgment in favor of Northwood, we AFFIRM.