(76 South. 223)

No. 22372.

Succession of LE BLANC.

(June 11, 1917.)

*(Syllabus by the Court.)*

1. EXECUTORS AND ADMINISTRATORS ⬤═46 — HUSBAND AND WIFE ⬤═248—SUCCESSION—DISTRIBUTION—LIFE INSURANCE.

Life insurance made payable to the executors, administrators, or assigns of the assured forms a part of his estate at his death; and the proceeds or avails of such insurance are either community property or the separate property of the estate of the assured, depending upon whether the assured was married or single when the insurance contract was made, not upon his marital status at the time of his death.

2. STATUTES ⬤═115(1)—TITLE—SUFFICIENCY.

The object of the Act No. 189 of 1914. to exempt the proceeds or avails of all life insurance from all liability for any debt, except a debt secured by a pledge or an assignment of the policy, or an advance payment made on the policy, is expressed in the title "An act to exempt the proceeds of life insurance from liability for debt."

3. CONSTITUTIONAL LAW ⬤═180 — EXEMPTIONS ⬤═3—IMPAIRMENT OF OBLIGATION OF CONTRACTS.

A statute exempting the proceeds or avails of life insurance from liability for debt does not impair the obligation of a contract of insurance made before the passage of the act.

4. EXEMPTIONS ⬤═30—LIFE INSURANCE—EXEMPTIONS.

The exemption of the proceeds or avails of all life insurance from liability for any debt (except a debt secured by a pledge or an assignment of the policy, or an advance payment made on the policy), by the Act No. 189 of 1914, is not merely a personal exemption in favor of the person insured, but inures to the benefit of his heirs at law, and exempts the proceeds or avails of life insurance made payable to the executors or administrators or assigns of the assured from liability for his debts, or the debts of his succession, at his death.

5. EXECUTORS AND ADMINISTRATORS ⬤═314(13) — SUCCESSION — EXPENSES — COMMUNITY PROPERTY.

If the assets of an estate, including the half interest of the deceased in the community property other than the proceeds or avails of the insurance on his life, are sufficient to pay the law charges, costs of administration, expenses of last illnesses, and funeral expenses, there is no reason for requiring the half interest of the heirs of the predeceased wife, in the community property, to bear any part of the costs of administering the estate of the deceased husband.

Appeal from Seventeenth Judicial District Court, Parish of Vermilion; William Pierrepont Edwards, Judge.

In the matter of the succession of Adonis Le Blanc. J. Earl Le Blanc and tutor of the minor children filed oppositions. From the judgment dismissing the opposition and the claim of certain creditors, the opponents and creditors appeal. Amended and as amended affirmed.

Smith & Carmouche, of Crowley, for appellants Crowley Bank & Trust Co. and J. Earl Le Blanc. Broussard & Samson, of Abbeville, for interveners and opponents, Albert Stauffer, F. A. Godchaux, and O. A. Broussard. Mouton & DeBaillon, of La Fayette, for appellees administrators.

O'NIELL, J. Adonis Le Blanc took out three policies of insurance, for $2,000 each, known as 20-annual-payment policies, on his life during his marriage with Rose Thibault Le Blanc. Two of the policies, in the Equi-

table Life Assurance Society, were made payable "to his wife, Rose Le Blanc, if living, if not then to the assured's executors, administrators or assigns, subject to the right of the assured to change the beneficiary." The third policy, in the Fidelity Mutual Life Insurance Company of Philadelphia, was made payable "to his wife, Rose Le Blanc, or, if the insured (should) survive the aforesaid beneficiary, to the administrators, executors, or assigns of the insured."

The beneficiary named in the policies, Rose Thibault Le Blanc, died on the 16th of December, 1914, leaving eight children, issue of her marriage with Adonis Le Blanc. On the 30th of December, 1915, the surviving husband, availing himself of the privilege of changing the beneficiary named in the two policies in the Equitable Life Assurance Society, had them made payable to his estate. No change was made as to the beneficiary named in the policy in the Fidelity Mutual Life Insurance Company of Philadelphia; but, like the two policies in the Equitable Life Assurance Society, it became, by the death of Mrs. Rose Thibault Le Blanc, payable to the estate, the administrators or executors of the assured.

Adonis Le Blanc continued to pay the premiums on the three policies after the death of his wife and kept the insurance in force to the date of his death; that is, the 14th of January, 1916. Two of his children, J. Earl Le Blanc and Mrs. Oneida Le Blanc Melancon, had reached the age of majority. Mr. and Mrs. Melancon were appointed administrators of the succession of her father, and the Crowley Bank & Trust Company was appointed tutor of the six minor children.

The Fidelity Mutual policy, with the accumulations, at the date of the death of the insured, amounted to $3,038, on which the insured had obtained a loan from the company amounting to $811.27 at the time of his death. The net proceeds or avails of the life insurance collected by the administrators, therefore, amounted to $6,226.73.

Other property belonging to the community theretofore existing between the assured and his wife consisted of real estate valued at $1,375, and personal property valued at $496.50. It appears that the community owed the separate estate of the assured $226.12 for premiums paid on the insurance policies after the death of Mrs. Le Blanc, and $90.58 for certain pavement certificates paid by him for the improvement of the community property after her death. The separate estate of Adonis LeBlanc also owns 82 shares of the capital stock of the Stauffer-Godchaux Company, valued at $4,100, on which there is a vendor's lien in favor of Frank A. Godchaux, Albert Stauffer and O. A. Broussard for $6,625. The administrators also have in their possession $482.89 cash belonging to the separate estate of Adonis Le Blanc. It appears, therefore, that the assets of the separate estate of Adonis Le Blanc, exclusive of any interest in the life insurance, and excluding also the debts due by the community to the separate estate and the capital stock in the Stauffer-Godchaux Company, affected by the vendor's lien, amount to $1,418.64; that is, about $200 more than the law charges, costs of the administration, expenses of last illness, and funeral expenses. The other debts due by Adonis Le Blanc, at the time of his death, besides the debt of $6,625 secured by the vendor's lien on the capital stock in the Stauffer-Godchaux Company, amounted to only $267.35.

The administrators filed an account or a statement showing the proposed method of distribution of the assets of the estate, and prayed for judgment approving the account and ordering that a settlement be made accordingly. They treated the $6,226.73 collected from the insurance companies as an asset of the community, less the premiums paid by Adonis Le Blanc after the death of his wife, amounting to $226.12, which amount

was charged to the community and credited to the separate estate of Adonis Le Blanc.

J. Earl Le Blanc and the tutor of the minor children of Adonis Le Blanc filed an opposition to the account and manner of settlement of the succession proposed by the administrators, on the ground that the entire proceeds or avails of the life insurance are, by the Act No. 189 of 1914, exempt from liability for any debt of the succession of Adonis Le Blanc, and should be paid to his heirs at law.

Frank A. Godchaux, Albert Stauffer, and O. A. Broussard, as creditors of the succession, opposed the account and the proposed manner of settlement of the succession, claiming that the entire proceeds or avails of the life insurance should be treated as an asset of the separate estate of Adonis Le Blanc, not an asset of the community, and should be applied to the payment of his debts. In the alternative—that is, in the event the court should hold that the proceeds or avails of the life insurance should be treated as an asset of the community and not of the separate estate of Adonis Le Blanc—these three creditors claimed that the estate of the deceased wife of Le Blanc should bear a proportionate share of the law charges and costs of the administration of his estate.

In answer to the opposition filed by J. Earl Le Blanc and the tutor of the minor children of Adonis Le Blanc, the creditors, Godchaux, Stauffer and Broussard, contend that the Act No. 189 of 1914, purporting to exempt the proceeds or avails of life insurance from liability for any debt, is unconstitutional, in that the text is broader than the title of the statute; and that the statute cannot, in this case, have the retroactive effect of impairing the obligations of contracts. In the alternative, they contend that, if the statute should be held constitutional, the exemption was personal to and in favor of the insured and did not survive in favor of his heirs at law.

Other oppositions were made to the account of the administrators and proposed manner of settlement of the estate, which, however, are not involved in the present appeal.

Judgment was rendered dismissing the opposition of J. Earl Le Blanc and of the tutor of the minor children of Adonis Le Blanc, at their cost, rejecting the demand of Godchaux, Stauffer and Broussard to have the proceeds or avails of the life insurance treated as an asset of the separate estate of Adonis Le Blanc, but allowing their alternative demand that the estate of the deceased wife of Adonis Le Blanc should be charged with a proportionate share of the costs of the administration of this estate. J. Earl Le Blanc and the tutor of the minor children of Adonis Le Blanc, on the one hand, and the creditors, Godchaux, Stauffer and Broussard, on the other hand, have appealed from the judgment.

### Opinion.

[1] It is argued on behalf of the creditors, Godchaux, Stauffer and Broussard, that, inasmuch as the proceeds or avails of the life insurance would, if the wife of the insured had survived him, belong to her separately and individually, therefore the life insurance payable to the estate of the assured should belong to his separate estate, not to the community. But the learned counsel who advance that argument overlook the fact that the proceeds or avails of life insurance in favor of a beneficiary named in the policy, other than the insured, belong to the beneficiary named in the policy, and do not form part of the estate of the insured at his death. In fact, the taking out of life insurance in favor of the wife of the insured is in the nature of a donation by the husband to the wife. Life insurance in favor of the estate, the executors or administrators, of the person insured, forms a part of his estate at his death; and the status of the proceeds or avails of such life insurance—that is,

whether it is community property or property of the separate estate of the insured—depends upon whether the contract of insurance was made during the marital community or when the insured was single. The status of the proceeds or avails of such insurance, whether community property or the separate property of the insured, is not governed by the marital status of the insured at the time of his death. See Succession of Buddig, 108 La. 406, 32 South. 361; Succession of Verneuille, 120 La. 605, 45 South. 520; Succession of Roder, 121 La. 692, 46 South. 697, 15 Ann. Cas. 526. The account of the administrators is correct, in so far as the amount of the proceeds or avails of the life insurance is credited to the community, and in so far as the amount of the premiums paid after the death of the wife of the assured is charged to the community and credited to the separate estate of the assured. But that is a mere matter of bookkeeping, in this case, because the proceeds or avails of the life insurance are, by the Act No. 189 of 1914, exempt from liability for debt; and our conclusion that the proceeds or avails of the life insurance in question belonged to the community, and not to the separate estate of the insured, is of no practical importance in this case.

[2] The contention of the learned counsel for the creditors, Godchaux, Stauffer and Broussard, that the Act No. 189 of 1914 contains objects or provisions not expressed in its title, and that the statute, therefore, violates article 31 of the Constitution of this state, is founded upon the fact that the statute purports to exempt from liability for debt the *proceeds or avails* of all life insurance, whereas the object expressed in the title of the act is to exempt only the *proceeds* of life insurance. It is contended that the *proceeds* of life insurance means the total amount collected from the insurance company or companies, whereas the *avails* of life insurance means only the balance of the insurance money remaining after the payment of the debts due by the assured or his succession. Our opinion is that the word *avails*, as used in this statute, means the net amount or proceeds collected from the insurance company or companies, and that the words *proceeds* and *avails*, in the expression, "the proceeds or avails of all life insurance," are synonymous terms. See Webster's New International Dictionary, and the Century Dictionary, verbo *avails*. See, also, 6 C. J. 872, 4 Cyc. 1075; 3 Am. & Eng. Enc. of Law (2d Ed.) vol. 3, p. 518. It is true, the word *avails*, in a sense, means only the net proceeds. In that sense, it means the net amount of insurance money collected, after deduction of any debts for which the proceeds or avails of life insurance are not exempt from liability, under the statute, as, for example, the amount of a loan or advance payment made on the policy of insurance, or a debt secured by a pledge or assignment of the policy. However, the word *proceeds* being, in a sense, a more comprehensive term than the word *avails*, it cannot be said that the terms of the statute, exempting the *proceeds or avails* of all life insurance, is broader or more comprehensive than the object expressed in the title of the act, to exempt the *proceeds* of all life insurance. To maintain what the learned counsel contend in their brief, that the avails of life insurance means only the amount remaining after payment of the debts due by the estate of the assured, would result in a contradiction of terms and stultify the act of the Legislature. Our conclusion is that the object of the statute is expressed in its title.

[3] The contention that the exemption of the proceeds or avails of the life insurance in contest, under the Act No. 189 of 1914, would give the statute the retroactive effect of impairing the obligations of contracts, refers to the contracts of insurance, not to the contracts by which the debts, for which the proceeds or avails of the life insurance are

sought to be held liable, were incurred. It is admitted that the debts due to the creditors, Godchaux, Stauffer and Broussard, were contracted after the passage of the Act No. 189 of 1914; and that appears to be true of all of the debts due by the deceased, Adonis Le Blanc, or his succession. The statute, exempting the proceeds or avails of life insurance from liability for any debt, does not in any way impair or affect the obligation of a contract of insurance entered into before the passage of the act.

[4] The contention urged most seriously by the learned counsel for the administrators and for the creditors, and maintained by the district judge, is that the exemption of the proceeds or avails of life insurance made payable to the insured, his executors or administrators, as provided by the Act No. 189 of 1914, is personal to the insured, and does not survive in favor of his heirs at law.

The exact language of the statute is that the proceeds or avails of all life, including fraternal and co-operative, health, and accident, insurance shall be exempt from liability for any debt, except for a debt secured by a pledge of such policy, or any rights under such policy that may have been assigned, or any advance payments made on or against such policy.

The terms of the statute are sufficiently broad and comprehensive to exempt the proceeds or avails of life insurance from liability for debts due by the succession of the insured after his death, as well as to exempt the cash value or surrender value of policies of insurance during the lifetime of the insured. In fact it is difficult to conceive of more comprehensive or plainer language than the Legislature has used to exempt from liability for the debts of the insured, after his death, the proceeds or avails of life insurance paid or payable to his estate, his executors or administrators. The proceeds or avails of life insurance means the amount collected from the insurance company or companies; and, as a general rule, there are no proceeds or avails of life insurance until the death of the insured. For example, fraternal life insurance has no commercial or cash value during the lifetime of the insured, and could not possibly be levied upon or rendered liable for debt during his lifetime. We cannot believe that the Legislature intended to exempt from seizure or liability for debt, only during the lifetime of the insured, the cash value or surrender value of policies of life insurance made payable to the insured, his executors or administrators, and did not intend to exempt from liability for debts of the insured the proceeds or avails of life insurance made payable to his estate and collected by his executors or administrators after his death.

The proceeds or avails of life insurance in favor of a beneficiary other than the estate of the insured, his executors or administrators, is not liable for the debts of the insured. Hence it could not have been the intention of the Legislature that the exemption, from liability for debts of the insured, of the proceeds or avails of life insurance collected after his death, should apply only to insurance in favor of a beneficiary other than the person whose life was insured, and not to insurance in favor of the estate, the executors or administrators, of the insured.

It is contended by the learned counsel for the administrators and the creditors that the mere fact that life insurance is made payable to the administrators, executors, or assigns of the assured implies that the proceeds or avails are liable for the debts to be paid by the executors or administrators. If that had been the idea or intention of the Legislature, there would have been no reason for excepting from the operation of the statute a debt secured by a pledge or assignment of a policy of insurance. It is evident, from the exception of a debt secured by a pledge or assignment of a life insurance policy, that the Legislature did not intend

that the making of life insurance payable to the estate, the executors, administrators, or assigns, of the assured, should be regarded as a pledge or an assignment of the proceeds or avails of the insurance to the creditors of the assured. The express mention of a debt secured by a pledge or assignment of an insurance policy, a loan or advance payment made on or against the policy, as excepted from the operation of the statute, implies that there are no other exceptions. Expressio unius personæ vel rei est exclusio alterius.

It is argued, on behalf of the administrators and the creditors, that an exemption of any property from seizure or liability for debt is personal to those in whose favor it is granted, and does not survive in favor of their heirs. A number of decisions are cited in support of the proposition that the homestead exemption in favor of the head of a family did not survive in favor of the heirs at law of a deceased beneficiary until it was expressly provided, in the Constitution of 1879, that the benefit of the homestead exemption might be claimed by the surviving husband or wife or minor children of a deceased beneficiary. The doctrine of those decisions has no application to the exemption claimed in this case, for several reasons. First of all, the exemption under consideration, unlike the homestead exemption, is not granted in favor of, or expressly confined to, any particular person or designated class of persons or individuals. The statute merely exempts the proceeds or avails of all life insurance from liability for any debt (except a debt secured by a pledge or assignment of a policy, or an advance payment or loan on the policy), without regard to who the debtor may be. Secondly, the language of the Act No. 189 of 1914 is that the proceeds or avails of all life insurance shall be "exempt from all *liability* for any debt"; whereas the language of the Constitution, exempting the homestead, is

that it "shall be exempt from *seizure and sale.*" And, thirdly, it is not only the insurance itself, or the cash value or surrender value of the insurance while in force, but the proceeds or avails—the fund actually realized from the insurance—that is exempt from liability for any debt. Our opinion is that the language of the statute, that the proceeds or avails of all life insurance shall be exempt from all liability for any debt, expresses the intention that the exemption shall survive the person insured and inure to the benefit of his heirs at law if the insurance be payable to his estate, his executors or administrators.

In Holmes v. Marshall, 145 Cal. 777, 79 Pac. 534, 69 L. R. A. 67, 104 Am. St. Rep. 86, 2 Ann. Cas. 88, it appears there were three paid-up life insurance policies, two payable to the wife of the assured, and one payable to his estate, his administrators or executors. At the death of the insured, the amount of the two policies made payable to his wife was paid to her, and the amount of the policy that was payable to his estate, his administrators or executors, was paid to the administrators. The balance remaining from that policy, after payment of the costs of administration, was set apart to the widow, as exempt from liability for any debts of the estate, under a provision of the Code of Civil Procedure of California. The proceeds of all three of the policies were deposited by the widow in a bank in Los Angeles, and, after she had drawn against the account from time to time, the balance in bank was seized under a writ of attachment to satisfy a debt due by the widow. She contended that the fund was exempt from seizure under the section of the Code of Civil Procedure which declared: "All monies, benefits, privileges, or immunities accruing or in any manner growing out of any life insurance, * * * [are] exempt from execution." Code Civ. Proc. § 690, subd. 18. The seizing creditor contended that the exemption extended only to debts

due by the person whose life was insured and who had paid the premiums; but that it did not continue, after his death, in favor of the beneficiary, whether the insurance was payable to the estate of the person insured, his executors or administrators, or to some other person named in the policy of insurance. It was held that the words "exempt from execution" meant exempt from execution for any debt, whether due by the estate of the insured or due by the beneficiary named in the policy of insurance. It was observed that, in Kentucky and Minnesota, the statutes exempting certain insurance benefits, reliefs, etc., from execution or liability for any debt of a member, were construed so as to exempt the funds, resulting from the insurance benefits or relief, from liability for a debt due by the member of the insurance society, or by a beneficiary to whom the benefit or relief was paid, or who was entitled to the benefit or relief. It was observed that, in New York, a statute declaring certain insurance funds or benefits exempt from execution or liability for any debt of a deceased member of an insurance society exempted the fund from seizure or liability only for a debt of the deceased member insured, and did not extend to debts due by the beneficiary who received the fund. It was also observed that, although the Kentucky and Minnesota decisions had been criticized by Freeman in his book on Executions (3d Ed.) vol. 2, § 234b, the author had admitted that, if the statutes of those states had stopped with the words, "exempt from execution," there would be no doubt of the exemption in favor of the beneficiary; but he reasoned that the additional words of the statute, "to pay any debt or liability *of a member*," indicated that the Legislature had in mind only the debts or liabilities of the members of the insurance association, and hence, after the benefit was received by a beneficiary other than the member insured, it was subject to the general laws relating to executions or liability for debts of the

person or persons who had received the benefit.

It is not necessary to apply the exemption, in the case before us, to the extent to which it was applied under the statutes of Kentucky, Minnesota, and California.

A statute of Washington exempted the proceeds or avails of all life and accident insurance from all liability for any debt. In Flood v. Libby, 38 Wash. 366, 80 Pac. 533, 107 Am. St. Rep. 851, the question at issue was whether the statute applied only to such life insurance as was payable to a beneficiary other than the insured, or applied also to an endowment policy of insurance payable to the insured or to his estate, and having a cash value during his lifetime. It was held that the language of the statute was so sweeping and comprehensive that it exempted from liability for a debt of the assured, during his lifetime, an endowment policy payable to the assured or his estate and having a cash surrender value. It was not disputed, but was, on the contrary, conceded, that the proceeds or avails of the life insurance made payable to the assured or his estate would be exempted from liability for the debts of the assured at his death.

Our conclusion is that the fund of $6,226.73, being the proceeds or avails of the life insurance collected by the administrators, is exempt from liability for any debts of the insured, Adonis Le Blanc, or of his succession, and must be paid to his heirs at law.

[5] As the assets of the estate of Adonis Le Blanc, including his half interest in the community property other than the proceeds or avails of the life insurance, are sufficient to pay the law charges, costs of administration, expenses of the last illness, and funeral expenses of the deceased, there is no reason whatever for requiring the half interest belonging to the heirs of Mrs. Le Blanc in the community property to bear any part of the cost of administering his estate.

For the reasons assigned, the judgment

appealed from is amended so as to exempt the fund of $6,226.73, being the proceeds or avails of the life insurance, from liability for any debt of Adonis Le Blanc or of his succession, and require the administrators to pay that fund to the heirs at law of the deceased, Adonis Le Blanc; and the judgment appealed from is further amended by exempting the property or funds of the estate of the deceased, Rose Thibault Le Blanc, from the payment of any of the costs of administration of the estate of Adonis Le Blanc. As thus amended, the judgment appealed from is affirmed. The appellants, Godchaux, Stauffer and Broussard, are to pay the costs of this appeal.

SOMMERVILLE, J., takes no part.