CARTER, Judge.
This appeal arises out of a trial court judgment in a concursus proceeding.

BACKGROUND

By order dated June 12, 1989, in the matter entitled “Douglas D. Green, as Commissioner of Insurance for the State of Louisiana vs. Champion Insurance Company,” suit number 344,656, Division “M,” Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, Frederick S. Ellis was appointed liquidator ad hoc of Champion Insurance Company (Champion). Pursuant to his duties as liquidator ad hoc, Ellis asserted certain claims involving Champion against John M. Eicher (Eicher).
On August 10, 1989, the trial court signed an order enjoining Eicher from transferring, alienating, encumbering, or otherwise disposing of any of his assets in one or more transactions aggregating in excess of $10,-000.00 without prior notice and approval by the court.
On January 11, 1990, the liquidator filed a petition for an injunction, an accounting, and a declaratory judgment against various defendants, including Eicher. On January 26, 1990, the trial court signed a judgment ordering each defendant to provide an accounting to the court and to the liquidator of all of his material transactions with Champion and with each of the other defendants from June 5,1987. The trial court judgment also maintained in full force and effect the injunction previously issued against Eicher on August 10,1989, until the accounting was provided to the court.
At the time, Eicher had in full force and effect seven life insurance policies issued by National Equity Life Insurance Company (“National”).[1] Under the terms of the policies, without the consent of the beneficiary, National could lend to the policyholder a percentage of the policy's value. On July 13, 1991, Meredith Eicher, Eicher’s daughter and attorney-in-fact, requested that National pay Eicher the cash surrender or loan value of the policies. The policies listed a total loan amount of $29,184.43.
In December of 1991, Eicher and Ellis, entered into a “Settlement and Compromise Agreement.” Schedule 1, which was at *1353 tached to the agreement, listed all of Eicher’s assets, including the seven life insurance policies.[2] The agreement provided that Eicher consented to entry of a consent judgment against him in the amount of $10 million and that he would transfer and convey to the liquidator the following: (1) an undivided one-half interest in and to a certain lot in East Baton Rouge Parish; and (2) all ownership interest in and to Boardwalk International, Inc., Capital Insurance Company, and Orleans Bank, including but not limited to the stock described in the stock powers attached to the agreement. In consideration for the transfer and conveyance of the lot and stock, the agreement provided that Eicher was released and discharged from the claims against him relating to the allegedly fraudulent transactions in which he engaged and which contributed to the insolvency of Champion and losses sustained as a result thereof. The agreement made no disposition or assignment of the life insurance policies. On December 17,1991, the trial court signed a judgment, approving the “Settlement and Compromise Agreement.”
On January 31, 1992, National filed a “Petition to Deposit Proceeds and Implead Rival Claimants.” Impleaded in the action and made defendants were: Eicher; his attorney, Meredith E. Eicher; and Ellis, liquidator ad hoc of Champion. By amended petition dated July 7, 1992, the Honorable James H. Brown, Jr., (Brown) was substituted for Ellis as a defendant. National admitted liability to the defendants for the full amount of the insurance proceeds and requested that the amount be deposited into the registry of the court in order for the defendants to assert their respective claims to the funds. By order dated July 9, 1992, the trial court granted National leave to deposit the sum of $29,184.43 into the registry of the court.
On July 13, 1992, Eicher and Meredith Eicher answered National’s petitions and filed a reconventional demand against National. The reconventional demand stated that, as a result of the settlement agreement between Eicher and the liquidator ad hoc of Champion, Eicher had been released and discharged from all claims asserted by the liquidator ad hoc. Therefore, Eicher contended that the injunction of August 10,1989, was no longer valid and that National should have paid him the cash surrender value of the policies. The reconventional demand went on to allege that neither the liquidator ad hoe nor any other person had a valid lien, privilege, or claim to the insurance policies or the proceeds thereof.
On July 29,1992, Brown filed an answer to National’s petitions, claiming that Champion had a judgment in its favor against Eicher for $10 million. Brown contended that, pursuant to the judgment, Champion was entitled to any and all liquidated assets belonging to Eicher, including the proceeds of the life insurance policies, which had been deposited into the court’s registry.
On August 14, 1992, National filed a peremptory exception pleading the objection of no cause of action as to Eicher’s reconven-tional demand. However, on September 18, 1992, the trial court overruled the exception.
On October 13, 1992, Brown filed a motion to release the funds which had been deposited into the registry of the court. The motion stated that “[b]y Writ of Fieri Facias, the East Baton Rouge Parish Sheriffs office served a Notice of Seizure upon Doug Wel-born,” Clerk of Court for the Parish of East Baton Rouge, “in partial satisfaction of the Judgment obtained against John M. Eicher dated December 17, 1991.” Therefore, Brown requested that the court release the funds from the registry of the court and turn them over to Champion.
On December 18, 1992, the trial court determined that, under LSA-R.S. 22:647, the cash surrender values of the insurance policies were exempt from seizure and denied the motion to release the funds in the court’s registry. The court ordered that Eicher and Meredith Eicher be permitted to withdraw the deposited funds from the registry of the court, less the costs of the proceedings and $1,000.00 to cover National’s attorney’s fees.
*1354 On January 29, 1993, the trial court signed a judgment in accordance with this ruling.
Brown suspensively appealed from the adverse judgment, assigning the following specifications of error:
1. The trial court erred in determining that the proceeds of the life insurance policies were exempt from seizure.
2. The trial court erred in failing to recognize the non-retroaetive effect of LSA-R.S. 22:647.

EXEMPTION OF CASH SURRENDER VALUES

Brown contends that the proceeds of the life insurance policies were not exempt from seizure under LSA-R.S. 22:647.
Prior to 1987, LSA-R.S. 22:647 A provided as follows:
The lawful beneficiary, assignee, or payee, including the insured’s estate, of a life insurance policy or endowment policy, heretofore or hereafter effected shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the' insured and of the person effecting the policy or the estate of either, and against the heirs and legatees of either such person, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.
By Acts 1987, No. 210, § 1, effective July 2, 1987, LSA-R.S. 22:647 A was amended to add the following final sentence to subsection A: “For purposes of this Subsection, the proceeds and avails of the policy include the cash surrender value of the policy.” In 1990, the legislature again amended LSA-R.S. 22:647, designating the original paragraph of subsection A, as amended in 1987, as paragraph A(l) and adding paragraph A(2).[3] The notes following the newly enacted subsection A(2) indicate that subsection A(2) is not retroactive. However, the notes and the statute itself are silent with regard to the retroactivity of LSA-R.S. 22:647 A(l).
LSA-R.S. 1:2 mandates that no statute is retroactive, unless it is expressly so stated. However, although substantive laws can be applied prospectively only, laws that are procedural, remedial, or curative can be accorded retroactive effect. LSA-C.C. art. 6; Graham v. Sequoya Corporation, 478 So.2d 1223, 1226-26 (La.1985). The jurispru dence has established definitions to determine whether a statute is considered substantive or procedural, remedial, or curative. Crowley v. City of Lafayette, 602 So.2d 40, 44 (La.App. 3rd Cir.), writ granted, 601 So.2d 663 (La.1992), reversed in part on other grounds, 609 So.2d 199 (La.1992).
A substantive law is one that creates an obligation; its acts are generally defined as those which create, confer, define, or destroy rights, liabilities, causes of action, or legal duties. Roadrunner Motor Rebuilders, Inc. v. Ryan, 603 So.2d 214, 218 (La.App. 1st Cir.1992). Procedural, remedial, or curative statutes relate to the form of the proceeding or operation of the laws. Procedural *1355 acts describe methods for enforcing, processing, administering, or determining rights, liabilities, or status. Crowley v. City of Lafayette, 602 So.2d at 44; American Waste and Pollution Control Company v. State, Department of Environmental Quality, 597 So.2d 1125, 1128 (La.App. 1st Cir.), writs denied, 604 So.2d 1309, 1318 (La.1992); Young v. American Hoechst Corporation, 527 So.2d 1102, 1103 (La.App. 1st Cir.1988). Curative acts are those that remove past disabilities in order to effect the true intent of the legislature. Crowley v. City of Lafayette, 602 So.2d at 44.
Laws that are merely interpretive of existing legislation are also afforded retroactive application. Duncan v. South Central Bell Telephone Company, 608 So.2d 649, 653 (La.App. 2nd Cir.1992), writ denied, 610 So.2d 800 (La.1993); Crowley v. City of Lafayette, 602 So.2d at 44. Statutes are considered interpretive if they explain existing rights and duties, rather than establishing a new right or duty. Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331, 1339 (La.1978); Duncan v. South Central Bell Telephone Company, 608 So.2d at 653. Interpretive legislation does not destroy vested rights because it does not create new rules. Interpretive legislation merely establishes the meaning that the statute being considered had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties. Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576, 591 (La.1974); Duncan v. South Central Bell Telephone Company, 608 So.2d at 653. In a sense, interpretive acts explain existing laws or add to them provisions which the lawmakers believe to be salutary. Dripps v. Dripps, 366 So.2d 544, 548 (La.1978).
Prior to the enactment of the 1987 amendment to LSA-R.S. 22:647 A, the jurisprudence generally held that cash surrender values constituted “proceeds and avails” of a life insurance policy under LSA-R.S. 22:647. In Rosenberg-Oldstein Co., 236 F. 812 (E.D.La.1916), and in Hogan v. Hall, 118 F.2d 247 (5th Cir.1941), the courts held that the cash surrender value of a policy of life insurance was exempt from seizure by the creditors of a bankrupt insured. In the Matter of Lamb, 272 F.Supp. 393, 394 (E.D.La.1967), the court held that, under Louisiana law, the cash surrender value of insurance policies issued on the life of a bankrupt is not an asset of the bankrupt’s estate that can be seized by the trustee for the benefit of creditors. The court stated as follows:
Louisiana law specifically exempts the “proceeds and avails” of the policy insofar as the “lawful beneficiary, assignee, or payee ” is concerned. If, at the time the insured became a bankrupt he had a right to demand the cash surrender value of the policy from the issuing company, he is certainly a “payee” of that cash surrender value. And if he is a “payee” he is entitled to the “proceeds and avails,” including the cash surrender value as against his creditors. In other words, if he has a right to the “proceeds and avails” as a “payee,” these “proceeds and avails” are exempt from seizure. It seems quite clear that the very reason for the inclusion of “payees” in the protected class is to exempt from seizure such proceeds and avails to which the insured himself might be entitled during his lifetime. The death benefits are exempt from seizure by the language of the Act which includes “beneficiaries” and “insured’s estate” in the group of protected persons or entities.
Each amendment made by the Louisiana Legislature to the ... Statute pertaining to exemption of proceeds from insurance policies has been designed to liberalize rather than to restrict the scope of the exemption.
[[Image here]]
There is no reason to believe that ... the later re-enactments of that Act intended to limit the scope of exemption so as to exclude the cash surrender value of insurance policies when, prior to the passage of that Act, the law was clear that the prior acts did include the cash surrender value in the category of exempt property. See Succession of LeBlanc, 142 La. 27, 76 So. *1356 223, 223 L.R.A. 1917F, 1137 (1917).[4]
In the Matter of Lamb, 272 F.Supp. at 395-96.
However, in Succession of Sellars, 197 So.2d 655, 658 (La.App. 4th Cir.), writ refused, 250 La. 920, 199 So.2d 922 (1967), the court held that the cash surrender value of a life insurance policy did not constitute “proceeds and avails” for purposes of LSA-R.S. 22:647.
After reviewing LSA-R.S. 22:647 prior to amendment in 1987 and the jurisprudence interpreting the statute, we conclude that the 1987 amendment to subsection A of the statute is not substantive, but merely is interpretive of existing legislation. When the legislature added the final sentence to subsection A of LSA-R.S. 22:647, it did not create a new right or duty, but merely explained the meaning of the statute, i.e., that “proceeds and avails” of a life insurance policy specifically include its cash surrender value. Because we have concluded that the 1987 amendment to subsection A of LSA-R.S. 22:647 is interpretive, the amendment can be applied retroactively.[5] Therefore, the cash surrender values of the life insurance policies involved in the instant case are exempt from seizure by Eicher’s creditors, and the trial court did not err in so holding.[6] As such, the trial court did not err in refusing to permit Brown to withdraw the funds from the registry of the court and in permitting Eicher and Meredith Eicher to withdraw the funds, less the costs and attorney’s fees.

FRIVOLOUS APPEAL DAMAGES

Eicher and Meredith Eicher filed with this court a “Motion for Summary Disposition and Damages for Frivolous Appeal,” which was referred to the merits.
LSA-C.C.P. art. 2133 A provides, in pertinent part, as follows:
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such eases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. (Emphasis added).
In the instant case, the Eichers’ “Motion for Summary Disposition and Damages for Frivolous Appeal” is in the nature of an answer to the appeal. However, we need not determine whether the motion is equivalent to an answer because the motion was not filed timely. The record indicates that the return date for the appeal was April 9, 1993, and that the record was lodged on April 13, 1993. However, the motion was not filed until May 24, 1993, more than fifteen days from the lodging of the record. Therefore, the Eichers’ claim for damages for frivolous appeal is not properly before this court and will not be considered.

CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed at appellant’s costs. The motion filed by Eicher is also dismissed at his cost.
AFFIRMED; MOTION DISMISSED.

. Although the record does not indicate the date on which the policies were issued to Eicher, it is clear that the policies had been issued prior to 1987.

. We note that, on the schedule, Eicher listed the present value of the life insurance policies as "unknown" and failed to disclose that he had applied for the cash surrender value of the policies.

. LSA-R.S. 22:647 A(2) provides as follows:
The exemption authorized in Subsection (A)(1) from seizure under any writ, mandate, or process issued by any court of competent jurisdiction, including any bankruptcy proceedings, shall not apply to that portion of the cash surrender value, or loan value of any life insurance policy, endowment policy, or annuity contract payable upon surrender during the lifetime of the insured or annuitant which exceeds the sum of thirty-five thousand dollars if such policy or contract was issued within nine months of issuance of such writ, mandate, or process or the filing of a voluntary or involuntary bankruptcy proceeding under the United States Code. However, an insurer shall be liable only for such amounts that exceed the thirty-five thousand dollar exemption which are in the insurer’s possession at the time the insurer receives, at its home office, written notice by or on behalf of a creditor of claims being made against such value or interest with specification of the amount claimed. The insurer shall have no obligation to determine the validity or the accuracy of the amount of the claim and shall be relieved of further liability of any kind with respect to the monies paid upon such request of a creditor. An insurer shall be entitled to be paid by preference and priority over the claim of any such seizing creditor the balance of any bona fide loan to such insured or owner which is secured by such interest or value in such policy or contract.
See Acts 1990, No. 910, § 1.

. We note that, in Succession of LeBlanc, 142 La. 27, 76 So. 223, 226 (1917), the court stated that:
The terms of the statute are sufficiently broad and comprehensive to exempt the proceeds or avails of life insurance from liability for debts due by the succession of the insured after his death, as well as to exempt the cash value or surrender value of policies of insurance during the lifetime of the insured. (Emphasis added).

. We note that the Insurance Code was revised again in 1991. After January 1, 1993, LSA-R.S. 22:647 has been designated as LSA-R.S. 22:3042. See Acts 1991, No. 1031, § 1.

. The "Settlement and Compromise Agreement” between Eicher and Ellis was silent as to waiver of the right to have the proceeds or avails of the policies exempt from seizure. In the absence of such waiver, we cannot say that the trial court erred in finding the exemption applicable in the instant case. Moreover, we do not pass on the issue of whether the "Settlement and Compromise Agreement” could be set aside by direct action for Eicher's failure to disclose the cash surrender values or the fact that he had already attempted to withdraw the policy values.