Wesley ARLEDGE and Kathleen Arledge

v.

HOLNAM, INC., Ideal Cement Company, Inc., Dolese Brothers and Dolese Concrete Company, OKC Corporation & Louisiana Cement Company.

Civil Action No. 95–167–B–M1.

United States District Court, M.D. Louisiana.

July 12, 1996.

Ernest Mack Forbes, Jr., Denham Springs, LA, for Wesley Arledge, Kathleen Arledge.

M. Keith Prudhomme, Christopher Mark Trahan, Raggio, Cappel, Chozen & Berniard, Lake Charles, LA, for Holnam, Inc., Ideal Cement Company, Inc., Basic Industries Inc.

John R. Tharp, David Mark Bienvenu, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, LA, for Dolese Brothers, Dolese Concrete.

Patrick J. Hanna, Rabalais, Hanna & Hays, Lafayette, LA, for Lone Star Industries, Inc.

Alfred R. Gould, Jr., Simon, Peragine, Smith & Redfearn, New Orleans, LA, for Holloway Sand & Gravel Company, Inc.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

### I. Introduction

This matter is before the Court on defendant's motion for summary judgment. Plaintiff, Wesley Arledge, was employed by Dolese Concrete Company ("Dolese") from 1956 until May 31, 1984, when he retired. During plaintiff's twenty-eight years of employment, he worked with bags of dry concrete powder, which apparently contain crystalline silica. On September 4, 1984, three months after the plaintiff retired, Louisiana Civil Code article 2315.3, which permits punitive damages for wanton or reckless disregard for public safety in the handling of hazardous substance, became effective. Approximately ten years later plaintiff was diagnosed with silicosis.

Plaintiff filed this suit against Dolese in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Louisiana in December 1994. In addition to seeking other damages, plaintiff seeks to recover punitive damages under Article 2315.3. The defendant timely removed this case to federal court on the basis of diversity jurisdiction.

Although Louisiana grants employers immunity from actions in tort brought by employees injured on the job, plaintiff claims *Billiot v. B.P. Oil Co.*[1] sets aside this immunity with respect to punitive damages. Plaintiff also claims that because defendant was "substantially certain harm would occur" it is liable for compensatory damages as well. In its motion for summary judgment, Dolese contends that: (1) Louisiana Civil Code article 2315.3 only applies to conduct that occurred after its effective date; and (2) the undisputed facts show that Dolese did not and could not have intended the alleged harm that occurred in this case. Therefore, Dolese argues that because it cannot be liable as a matter of fact or law for punitive or compensatory damages, summary judgment is proper. For the reasons which follow, this Court grants defendant's motion for summary judgment.

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[3] In opposing the granting of summary judgment, the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings, but by its own affidavits, depositions, answers to interrogatories, or admissions the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[4] When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[5]

Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing or pointing out to the court that there is an absence of evidence to support the non-moving party's case.[6] The moving party is not required to produce evidence to negate the non-moving party's claims.[7] The non-moving

1. 645 So.2d 604 (La.1994).

2. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559 (5th Cir.1992); *Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir.1986).

3. *Cormier*, 969 F.2d at 1560.

4. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Lavespere v. Niaga-*

*ra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990), *cert. denied,* 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993).

5. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Cormier,* 969 F.2d at 1560.

6. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554; *Lavespere,* 910 F.2d at 178.

7. *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2553–54; *Lavespere,* 910 F.2d at 178.

party must then come forward with evidence which shows a genuine issue exists as to each element for which that party bears the burden of proof at trial.[8] From this evidence, all reasonable inferences must be drawn in favor of the non-moving party.[9] Otherwise, no genuine issue as to any material fact exists, since a complete failure of proof concerning one element of the non-moving party's case necessarily renders all other facts immaterial, and the moving party is entitled to summary judgment.[10]

## II. Article 2315.3 & Billiot v. B.P. Oil Co: Punitive Damages Against an Employer

■ Punitive damages are currently at the center of controversy in Louisiana and across the country. The trigger of the debate in Louisiana is certainly *Billiot v. B.P. Oil Co.*[11] In *Billiot,* the Louisiana Supreme Court held that Article 2315.3 permits employees to recover punitive damages against their employers despite the exclusive remedy provision of Louisiana's workers compensation law. Arti-

cle 2315.3 clearly applies prospectively only.[12] However, this Court is presented with an issue of first impression regarding Article 2315.3: can the Court retroactively apply the provisions of 2315.3 to a case in which the cause of action arose after September 1, 1984, but the conduct occurred before that date?

■ Because there is no ruling by Louisiana's highest court on this issue,[13] it is the duty of this federal court sitting in diversity to determine as best it can what the Louisiana Supreme Court would decide.[14] In other words, when deciding an unresolved issue of state law, the federal court may not do merely what it thinks best, but, rather, must make an *"Erie* guess" as to how the state's highest court would rule under the facts of this case.[15] When making the *Erie* guess, the Court's prediction is based on: (1) lower state court decisions and Supreme Court dicta, (2) the general rule on the issue, and (3) other available legal sources, such as treatises and law review commentaries.[16] Addition-

---

8. *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993), *cert. denied sub nom. Kelley v. Industrial Refrigerated Sys., Inc.,* 510 U.S. 1043, 114 S.Ct. 688, 126 L.Ed.2d 656 (1994).

9. *Newport Ltd. v. Sears, Roebuck & Co.,* 6 F.3d 1058, 1064 (5th Cir.1993), *cert. denied,* 512 U.S. 1221, 114 S.Ct. 2710, 129 L.Ed.2d 836 (1994).

10. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

11. 645 So.2d 604 (La.1994). On June 17, 1995 the Louisiana Legislature amended and reenacted Louisiana Revised Statutes 23:1032(A)(1)(a) to provide for the exclusivity of worker's compensation remedies and exceptions. Since the legislation is expressly prospective only, its passage does not effect the disposition of this matter, as this suit was filed before the amendment's effective date.

12. In *Young v. American Hoechst Corp.,* 527 So.2d 1102 (La.App. 1st Cir.1988), Louisiana's First Circuit Court of Appeal, citing Louisiana Civil Code article 6, held that Article 2315.3 may not be applied retrospectively. That court wrote:

In our opinion, [Article] 2315.3 creates, defines and regulates rights. Therefore, we conclude that [Article] 2315.3 makes changes in the substantive law of this state, and that it may not be applied retrospectively unless the words employed by the legislature show a clear intention that the article should have retroactive effect. Since the legislature did not expressly indicate that the [Article 2315.3] was to be applied

retroactively, we hold that [Article] 2315.3 may apply prospectively only.

*Young,* 527 So.2d at 1103–04 (emphasis added). Additionally, this Court has interpreted Article 2315.3 to apply prospectively only. *Williams v. A.C. & S., Inc.,* 700 F.Supp. 309 (M.D.La.1988). That Article 2315.3 applies prospectively only, therefore, appears absolutely clear. Because there is no indication the Louisiana Supreme Court would decide differently, the determinative inquiry here is whether applying Article 2315.3 to the facts of this case would be to apply it "retroactively."

13. The Louisiana statute permitting certification of issues from a federal court to the state's highest court only permits certification from federal appellate courts. La.R.S. 13:72.1 (West 1983). Therefore, this Court may not certify the question to the Louisiana Supreme Court.

14. *Rogers v. Corrosion Prods., Inc.,* 42 F.3d 292, 295 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).

15. *Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 396–97 (5th Cir.), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

16. *Jackson,* 781 F.2d at 397. The Fifth Circuit in *Jackson* actually listed five sources of guidance to the *Erie* guess. However, only these three are applicable here.

al and more obvious sources that assist this Court in making its *Erie* guess are the constraints within which the Louisiana Supreme Court would have to make its decision. Specifically, that court would be required to decide the issue within the constraints of the laws and constitution of Louisiana and the United States Constitution.

## A. What is "Retroactive Application" of Law?

▮ Most cases that have dealt with issues of retroactivity have concentrated on whether a new law as a whole has a retroactive effect.[17] When analyzing statutes, these opinions, guided by Article 6 of Louisiana's Civil Code, focus on whether the legislature intended retroactivity and/or whether the statute is "substantive" or "procedural." [18] If the legislature does not explicitly make a new substantive law apply to past activity, the law cannot be applied retroactively. Substantive laws are presumed to apply prospectively only. On the other hand, if a law is procedural instead of substantive, it will apply to a cause of action that arose before the law went into effect, unless the legislature expressly states otherwise.[19] No stat-

ute, however, may be given an unconstitutional retroactive effect.[20]

Because the Louisiana legislature did not explicitly make Article 2315.3 "retroactive" and since the article has been deemed "substantive," it cannot be applied retroactively.[21] But would application of Article 2315.3 to this case be an exercise in retroactivity? If the article applies to "*causes of action*" that arise after its effective date,[22] it would apply to this case without being applied "retroactively" since the damages in this case occurred more than ten years after the law's effective date. If, on the other hand, Article 2315.3 applies to *conduct* that arises after its effective date, it does not apply to this case. The conduct in question occurred several months before the law became effective. Therefore, the key issue in determining the temporal application of Article 2315.3 in this case is not really its classification as substantive or procedural or the language in it characterizing it as "retroactive." Those issues have already been answered. Because it is not explicitly retroactive and it is substantive, it is not retroactive.[23]

▮ What is critical in this case is the activity the law was designed to regulate.[24]

---

**17.** *See, e.g., Rousselle v. Plaquemines Parish School Bd.,* 633 So.2d 1235, 1244 (La.1994).

**18.** *See supra* note 17. Article 6 provides: "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."

**19.** *See supra* note 18.

**20.** *Rousselle,* 633 So.2d at 1244.

**21.** *See supra* note 12.

**22.** In *Cole v. Celotex Corp.,* 599 So.2d 1058, 1063 (La.1992), the Louisiana Supreme Court wrote: "Generally, the determinative point in time separating prospective from retroactive application is the date the cause of action accrues." In a footnote, the court added that under Louisiana law a cause of action accrues when the party has a right to sue. *Cole,* 599 So.2d at 1063 n. 15. This statement is accurate as applied to statutes that may extinguish causes of action. However, when dealing with a statute that creates a cause of action, the retroactivity event is the conduct or activity regulated. In *Cole,* the court was concerned that retroactive application in that case would offend due process guarantees by divest-

ing a person of a vested right (a cause of action). However, when the law at issue attaches *new consequences* to past events, the constitutional concern is not as much with the due process clause as it is with the ex post facto prohibition.

**23.** *See supra* note 12.

**24.** Justice Scalia of the United States Supreme Court argues the entire retroactivity analysis should focus on the regulated activity. In *Landgraf.v. U.S.I. Film Prods.,* 511 U.S. 244, 291, 114 S.Ct. 1522, 1524–25, 128 L.Ed.2d 229 (1994) (Scalia J. concurring), he wrote:

> [A]bsent clear statement to the contrary, what is the presumed temporal application of a statute? For purposes of that question, a procedural change should be no more presumed to be retroactive than a substantive one. The critical issue, I think, is not whether the rule affects "vested rights," or governs substance or procedure, but rather what is the relevant activity that the rule regulates. Absent clear statement otherwise, only such relevant activity which occurs after the effective date of the statute is covered. Most statutes are meant to regulate primary conduct, and hence will not be applied in trials involving conduct that occurred before their effective date. But other

Of equal importance is the effect and/or purpose of the law because no law may have an unconstitutional effect. In interpreting Article 2315.3, this Court should presume that the legislature intended to give it a constitutional effect and that it be applied in a constitutional manner.

### B. Temporal Application of New Law

■ The pertinent jurisprudence, interpretive rules, and constitutional prohibitions make clear that the activity regulated by and the purpose/effect of Article 2315.3 are important in determining its temporal application.

Several cases in Louisiana focus on the activity regulated to determine whether an exclusively prospective law applies to a case involving certain facts which occurred before the law's effective date. *Tarver v. Eckstein Marine Service, Inc.,*[25] involved a February 22, 1990 collision between two vessels on the Mississippi River. Five months after the collision, Louisiana Revised Statutes 22:1220, which permits penalties against insurers who fail to pay settlements within thirty days after the agreement is reduced to writing, became effective. On March 25, 1993 defendant and plaintiff executed settlement agreements, but by June 3, 1993, defendant had not yet paid the settlement amounts. Thereafter, plaintiff filed suit to enforce the settlement and included a request for penalties, attorney fees, and costs pursuant to section 1220. Retroactivity was not a problem, according to the court, because "the conduct that [gave] rise to the claim [was] the untimely payment of the settlement and not the collision of the vessels."[26] Because the failure of the insurer to pay the settlements within thirty days was the triggering event for the claim of penalties, and because that event occurred after the effective date of section 1220, retroactive application of that statute was not involved.

Similarly, in *Louisiana ex rel. Guste v. Orkin Exterminating Co.,*[27] the court recognized the importance of the conduct giving rise to a claim brought under Louisiana's Unfair Trade Practices and Consumer Protection Law. There a contract was entered into before, but a breach of that contract occurred after the effective date of the pertinent statute. Focusing on the regulated activity, the court wrote: "The Commissioner stated specifically that the breach of contract constituted an unfair trade practice and looked to the language contained in the contract and the obligations it established to conclude this. The breach of contract occurred in 1981, subsequent to the effective date of the Act."[28] Thus, the conduct "giving rise to" the claim created by the legislation in question is important in determining the statute's temporal application.

■ The historical meaning of retroactivity also indicates the importance of the regulated activity. The renowned civil law scholar Planiol defined retroactivity as follows: "[A] law is retroactive when it goes back to the past either to *evaluate the conditions of the legality of an act,* or to *modify or suppress the effects of a right already acquired.* Outside those conditions, there is no retroactivity."[29] In this case, Article 2315.3 evaluates the conditions of the legality of conduct. If it were applied to evaluate conduct that occurred before its effective date, it would be retroactive. Therefore, since it has

statutes have a different purpose and therefore a different relevant retroactivity event. A new rule of evidence governing expert testimony, for example, is aimed at regulating the conduct of trial, and the event relevant to retroactivity of the rule is introduction of the testimony. Even though it is a procedural rule, it would unquestionably not be applied to testimony already taken—reversing a case on appeal, for example, because the new rule had not been applied at a trial which antedated the statute. Of course, under the *Erie* doctrine, this Court must follow Article 6, which sets up a substantive/procedural distinction giving rise to opposite presumptions of retroactivity. The regulated ac-

tivity approach offered by Justice Scalia, however, is helpful in determining when application of a given law amounts to retroactive application.

25. 633 So.2d 764 (La.App. 5th Cir.1994).

26. *Tarver,* 633 So.2d at 766.

27. 528 So.2d 198 (La.App. 4th Cir.), *writ denied,* 533 So.2d 18 (1988).

28. *Guste,* 528 So.2d at 204.

29. Planiol, No. 243 at 174.

been decided that Article 2315.3 is not retroactive, this Court may not apply it to this case.

A law's classification as substantive or procedural also hinges on the activity regulated. "A substantive law is one that creates an obligation; its acts are generally defined as those which create, confer, define, or destroy rights, liabilities, causes of action, or legal duties."[30] However, substantive laws, in and of themselves, do not *create* obligations, liabilities, or rights. Instead, they attach obligations, liabilities, or rights *to certain events, activities, or conduct.* In short, in deciding whether a law is substantive, a court must first determine whether the law "attaches a new obligation, right or liability." If the law does create such an attachment and is not explicitly retroactive, a court must, in order to avoid applying the law retroactively, determine what particular activity or conduct the law regulates. If the regulated activity took place before the law's effective date, and the legislature has not made the law retroactive, the statute cannot apply. Under the facts of this case, the activity regulated by Article 2315.3 occurred before the effective date of the article, and the legislature did not explicitly make Article 2315.3 retroactive. Thus, the Court cannot award permit punitive damages against the defendant under the facts of this case.

Even if the legislature made the law retroactive, such an effect must be constitutional. The constitution also requires a focus on the activity regulated to determine the permissible temporal application of a new law.

There are several instances in which retroactivity is prohibited by the United States[31] and Louisiana Constitutions.[32] For purposes of this case, the most pertinent and determinative prohibition is against ex post facto laws. The Ex Post Facto clauses of the Louisiana and United States Constitutions prohibit laws that are "passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed."[33] Thus, if a law attaches a new consequence to a certain event, it cannot be applied to those regulated events that occurred before the law's effective date. Article 2315.3 regulates conduct that amounts to wanton or reckless disregard for public safety in the handling of toxic or hazardous substances. Therefore, Article 2315.3 cannot apply to such conduct that occurred before September 1, 1984. Because it is undisputed that the conduct in this case occurred before that date, Article 2315.3 does not apply to permit punitive damages against the defendant.

Further, the prohibitions against ex post facto laws prevent this Court from applying 2315.3 to this case because the article is penal in nature.[34] An ex post facto law is also defined as one that "changes the punishment and inflicts a greater punishment than the law in effect when the crime was committed."[35] The purpose and effect of the article is clearly penal. Indeed, the Louisiana Supreme Court in *Billiot* stated:

> Punitive damages are regarded as a *fine or a penalty* for the protection of the public interest. It is not so much the particular tort committed *as the defendant's motives and conduct in committing it which will be important as the basis of the award. . . .*
>
> . . . .

**30.** *National Equity Life Ins. Co. v. Eicher,* 633 So.2d 1351, 1354 (La.App. 1st Cir.1994).

**31.** *See, e.g.,* U.S. Const. art. I, § 9, cl. 3; U.S. Const. art. I, § 10, cl. 1. *See also Landgraf v. USI Film Prods.,* 511 U.S. 244, 265–66, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994).

**32.** La. Const. art. I, §§ 2, 4, and 23.

**33.** *State v. Sepulvado,* 342 So.2d 630, 635 (La. 1977).

**34.** In *Landgraf,* the United States Supreme Court recognized the ex post facto problem that arises if a punitive damage provision were applied to permit such damages on the basis of past conduct:

> The very labels given "punitive" or "exemplary" damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions. Retroactive imposition of punitive damages would raise a serious constitutional question.

**35.** *Sepulvado,* 342 So.2d at 635.

Accordingly, we conclude that the purpose of Article 2315.3 is threefold: (1) *to penalize and punish defendants* for engaging in wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances that causes injury to others; (2) to deter the tortfeasors and others who might follow their example from exposing the public to dangers of that kind in the future; and (3) to provide victims injured by such conduct with the incentive to *act as the prosecutors of penal laws against such wrongdoers.* Article 2315.3 is not designed to repair the injuries of tort victims.[36]

 In summary, the time of the conduct regulated is the most critical factor for determining whether Article 2315.3 applies to this case. Further, since the article has a penal purpose and effect, applying it to past conduct for which punitive damages were previously unavailable would raise serious ex post facto problems under the United States and Louisiana Constitutions. A court should not interpret a law in such a way that would make it unconstitutional. Therefore, this Court holds that Article 2315.3 does not apply to conduct that occurred before its effective date, regardless of when the damages arose or were discovered.

Even if Article 2315.3 was applicable in this case, plaintiff has come forward with no evidence to show that defendants' actions amounted to wanton or reckless disregard for public safety in the handling or transportation of hazardous or toxic substance. Consequently reasonable minds could not differ as to the issue of "wanton or reckless disregard for the public safety." Therefore, summary judgment is proper as to punitive damages for this reason as well.

### III. Intentional Tort Exception to Employer Immunity

Plaintiff also claims that "at all relevant times Dolese supplied the concrete mix to the plant where petitioner Wesley Arledge worked and said defendant knew, or was substantially certain, that as a result petitioner Wesley Arledge would receive injuries from his exposure to concrete dust."[37]

Here, the defendants have discharged their summary judgment burden by pointing out to the Court an absence of evidence to support the non-moving party's case.[38] Therefore, the plaintiff, as the non-moving party, must come forward with evidence that shows a genuine issue exists as to each element for which that party bears the burden of proof at trial.[39] Plaintiffs have yet to come forward with any evidence supporting their allegation, as required under summary judgment procedure.[40]

Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment curiously states "as to intentional tort, petitioners *reserve the right to supplement* this memorandum after more information and facts are obtained through discovery. No discovery has been conducted to date by any party to this suit."[41] Absent court approval, plaintiff's attorneys may not extend the time period within which rebuttal evidence must be submitted. Plaintiffs have also failed to comply with the requirements of Rule 56(f) of the Federal Rules of Civil Procedure.[42]

It is also interesting that plaintiff's attorneys did not even include with their opposition such evidence that justified the initial allegation of an intentional tort. Therefore, because the plaintiff has presented absolutely no evidence, the delay for opposition has run, and neither a motion for leave of court nor a supplemental memorandum have been filed with this Court, summary judgment as to the issue of intentional tort is proper at this time.

Therefore:

36. *Billiot v. B.P. Oil Co.,* 645 So.2d 604, 612–13 (La.1994) (emphasis added) (citations omitted).

37. Pl.'s First Supplemental Pet. ¶ 6.

38. *See supra* note 6.

39. *See supra* note 8.

40. *See supra* notes 3–10 and accompanying text.

41. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ.J. at 3 (emphasis added).

42. *See Paul Kadair, Inc. v. Sony Corp. of Am.,* 88 F.R.D. 280 (M.D.La.1980), *aff'd,* 694 F.2d 1017 (5th Cir.1983).

**IT IS ORDERED** that the defendant's motion for summary judgment be and it is hereby **GRANTED.** Plaintiffs' claims against Dolese Bros. Co. and Dolese Concrete Company are dismissed with prejudice.